## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

HELGA GLOCK
     Plaintiff,

          v.

GASTON GLOCK SR., *et al.*,
     Defendants.

No.  1:14-CV-3249-TWT

## MOTION FOR LEAVE TO TAKE PRESERVATION DEPOSITIONS

- "It is stated for the record that neither [Gaston Glock Sr.] nor [Helga Glock] appeared today.  Both asked to be excused due to illness."

- Glock Sr.'s attorney excuses him from June 26, 2014 hearing due to "massive health problems."

- Glock Sr. requests postponement of October 24, 2014 hearing because of hospitalization from an "acute infection with decompensation of the cardiovascular system and the renal system."  It was "not clear if he can appear in court."[1]

- During his testimony on January 15, 2015 in the Regional Court Vienna, Glock Sr.'s medical doctor constantly observed his condition.  After about two hours of questioning, Glock Sr.'s deposition had to be halted because of his worsening health condition.[2]

---

[1]  January 28, 2015 Declaration of Mag. Roland Herbst ("Herbst Decl.") ¶ 3(a)-(c), filed in support of this motion.

[2]  February 5, 2015 Declaration of Mag. Peter A. Miklautz ("Miklautz Decl.") ¶¶ 4, 6, filed in support of this motion.

# TABLE OF CONTENTS

Factual Background ................................................................................................. 1

Argument ................................................................................................................ 2

A.  Preservation Depositions of Glock Sr. and Ms. Glock Are Necessary. ............ 2

   1.  Applicable Standard ............................................................................... 2

   2.  Plaintiff's Request Meets Applicable Standards. ................................... 4

B.  The Federal Rules Permit the Depositions of Managing Agents. .................. 10

   1.  Glock Sr. Is a Managing Agent of Glock, Inc. and Consultinvest. ............. 14

   2.  No Resort to the Hague Convention Is Necessary to Glock Sr. as
      a Managing Agent. ................................................................................ 18

C.  Glock Sr.'s Deposition Is Expected to Take a Substantial Number of
    Hours to Complete. ............................................................................... 19

Conclusion .......................................................................................................... 22

Plaintiff seeks leave of Court to take depositions of Defendant Gaston Glock Sr. and Plaintiff Helga Glock for purposes of preservation. Plaintiff is sensitive to the fact that discovery in this case has not yet begun. Glock Sr.'s age, illness, and infirmity have repeatedly caused postponements and cancelations of hearings and related proceedings in the various family law matters pending before Austrian courts.[3] Glock Sr. has unique knowledge about the complex business deals and structures at issue in this case. His illness or death during the pendency of this litigation would prejudice Ms. Glock through the loss of critical evidence.

## FACTUAL BACKGROUND

Ms. Glock brings this motion now because her own ill health and that of Glock Sr. have caused repeated postponements and cancelations of proceedings pending in Austria—even within the last thirty days. On January 15, 2015, Glock Sr. provided testimony via video conference in an Austrian proceeding because his counsel represented that he was too ill to travel even the relatively short distance from his home to Vienna.[4] During his testimony, Glock Sr.'s medical doctor was present and constantly monitored his condition. Glock Sr.,

---

[3] *See generally* Herbst Decl., Miklautz Decl.

[4] Herbst Decl. ¶ 6.

however, was only able to testify for two hours before the proceeding was stopped due to his poor health.[5]

Glock Sr. is, as yet, an unserved Defendant in this matter. He is, however, a managing agent of both Glock, Inc. and Consultinvest, Inc. ("Consultinvest")—two Georgia-based Defendants that have already been served and appeared in this action (albeit for purportedly limited purposes).[6] Accordingly, if granted the leave she requests, Glock Sr.'s deposition will be taken in his role as managing agent of these two corporate Defendants.

## ARGUMENT

**A.    Preservation Depositions of Glock Sr. and Ms. Glock Are Necessary.**

### 1.    Applicable Standard

Under Rule 32 of the Federal Rules of Civil Procedure, "all or part of a deposition may be used against a party" for trial where: (1) "the party was present or represented at the taking of the deposition or had reasonable notice of it"; (2) the deposition is "used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying"; and (3) where the party

---

[5]    Miklautz Decl. ¶ 6.

[6]    ECF Nos. 10-11, Notices of Special Appearance of counsel for Glock, Inc. and Consultinvest.

seeking to introduce the testimony makes a showing that the use of the deposition meets a set of circumstances enumerated in Rule 32(a)(2) through (8).[7]

The facts and analysis in *Charles v. Wade* are instructive.[8]  There, the U.S. District Court for the Southern District of Georgia had denied appellant leave to take the preservation deposition of a witness, Nixon, who was confined to prison and whose deposition implicated Rule 32(a)(4)(C).  The Fifth Circuit held the denial of leave was reversible error:

> When appellant sought the court's leave to depose Nixon, the court denied permission on the basis that the discovery period had closed.  This was clearly an inappropriate reason for denying appellant's motion to depose.  Although the discovery period had indeed closed at the time appellant made his motion, ***the requested deposition would not have been taken for purposes of discovery but as the testimony of a witness unavailable for trial***.[9]

The court elaborated on the distinction between a preservation deposition and a discovery deposition:

> The distinction is a valid one.  Appellant was not seeking to discover Nixon's testimony – appellant knew what Nixon had to say – but was seeking a means for

---

[7]    Fed. R. Civ. P. 32(a)(1).

[8]    665 F.2d 661 (5th Cir. 1982).

[9]    *Id.* at 664 (emphasis supplied).

introducing Nixon's testimony at trial.  A party to a lawsuit obviously is entitled to present his witnesses.  ***The fact that the discovery period had closed had no bearing on appellant's need, or his right, to have the jury hear Nixon's testimony***.  We hold that the court clearly erred in denying appellant's deposition motion on the ground stated in its order.[10]

Whether discovery is open, then, has no bearing on the parties' need to ensure that the testimony of Glock Sr. and Ms. Glock will be available for trial.  If the testimony of each is not preserved, it could be lost forever long before trial in this action ever takes place.  This would pose enormous difficulty for all aspects of the parties' ability to try this matter—from authenticating documents to providing testimony in support their claims and defenses.  As shown below, the criteria for taking preservation depositions are met here.

**2.     Plaintiff's Request Meets Applicable Standards.**

The first element of Rule 32 requires that the proposed deponent be "present or represented at the taking of the deposition" or have reasonable notice of it.[11] Both Glock Sr. and Ms. Glock are represented by counsel and would have reasonable notice of their preservation depositions.  They would necessarily be present at such depositions.

---

[10]   *Id.* (emphasis supplied).

[11]   Fed. R. Civ. P. 32(a)(1)(A).

The second element requires that the deposition be "used to the extent it would be admissible under the Federal Rules of Evidence if the deponent were present and testifying."[12]  Rule 804 of the Federal Rules of Evidence provides that deposition testimony is admissible when the deponent is unavailable at trial due, *inter alia*, to "death or a then-existing infirmity, physical illness, or mental illness."[13]  If the deponent ultimately proves to be available for trial, trial testimony may be used rather than the preservation deposition.[14]  This second element, then, depends on future events and affects whether the preservation testimony can actually be used at trial.  It does not prevent the preservation testimony from being taken in the first place.

Testimony that might otherwise be hearsay is therefore admissible when the declarant is unavailable if the testimony

> (A)    was given as a witness at a trial, hearing, or ***lawful deposition***, whether given ***during the current proceeding*** or a different one; and

> (B)    is now offered against a party who had—or, in a civil case, whose predecessor in interest had—an

---

12   Fed. R. Civ. P. 32(a)(1)(B).

13   Fed. R. Evid. 804(a)(4).

14   *Chao v. Tyson Foods, Inc.*, 255 F.R.D. 560, 560 (N.D. Ala. 2009).

> ***opportunity and similar motive*** to develop it by
> direct, cross-, or redirect examination.[15]

The third element of Rule 32 incorporates certain factors listed in Rule 32(a)(2) through (8), any of which must apply in order for the preservation deposition to be used at trial.  At least three of those factors are implicated here.

Under Rule 32(a)(4)(B), the deposition of a witness is admissible at trial if the witness is more than 100 miles from the place of the trial or is outside the United States.  Because there is no dispute that Glock Sr. resides in Austria, his deposition testimony would be admissible at trial under this provision.  Although Ms. Glock is also a resident of Austria, she has chosen to litigate in this forum.  Barring age, illness, infirmity, or death, she can and will testify at trial as necessary.

A witness's deposition testimony is admissible at trial if, at the time of trial, the witness is deceased or cannot attend or testify at trial due to age, illness, infirmity, or imprisonment.[16]  "The infirmity of an elderly witness that makes

---

[15]  Fed. R. Evid. 804(b)(1) (emphasis supplied).

[16]  Fed. R. Civ. P. 32(a)(4)(A), (C).

travel a 'grave and physical hardship' . . . justifies the use of deposition testimony at trial."[17]

Glock Sr. is 85 and Ms. Glock is 79. While Ms. Glock has suffered from bouts of illness that have prevented her from appearing or testifying at proceedings in Austria, Glock Sr. is in poor health. Evidence of the effects their poor health has had on the proceedings pending in Austria is filed in support of this motion.[18] Taking the deposition testimony of Glock Sr. and Ms. Glock for preservation purposes is therefore an appropriate and necessary safeguard against the possible loss of evidence.[19]

In an Austrian proceeding involving the Glock and Value *Privatstiftung* (private foundations), the health of Glock Sr. and Ms. Glock has repeatedly become an issue.[20] On January 14, 2014, both Glock Sr. and Ms. Glock were medically excused from appearing at a hearing before the Regional Court in Klagenfurt.[21]

---

[17] *United States v. Bond*, 362 F. App'x 18, 22 (11th Cir. 2010) (citing *United States v. Keithan*, 751 F.2d 9, 12 (1st Cir. 1984).

[18] *See generally* Herbst Decl. & Miklautz Decl.

[19] Fed. R. Civ. P. 32(a)(4)(A), (C).

[20] Herbst Decl. ¶ 3.

[21] Herbst Decl. ¶ 3(a).

On June 26, 2014, Glock Sr. did not appear at a hearing in the same court due to health reasons.  Ms. Glock was excused from testifying because she was exhausted two-and-one-half hours into the hearing.[22]   On October 20, 2014, Glock Sr. submitted a doctor's certificate to the Regional Court stating that he suffered from an "acute infection with decompensation of the cardiovascular system and the renal system."  He requested postponement of a hearing set for October 24, 2014.[23]  At the time of his request, Glock Sr. had already been hospitalized for two days.[24]

The health of Glock Sr. and Ms. Glock has also affected other actions pending in Austria.  In separate proceedings (challenging certain resolutions adopted by the General Assembly of Glock Ges.m.b.H.), Ms. Glock was unable to attend a February 20, 2014 hearing due to illness.[25]  As a result of his own illness, a court hearing held on April 4, 2014 was moved to a special room so that Glock Sr.

---

[22]   Herbst Decl. ¶ 3(b).

[23]   Herbst Decl. ¶ 3(c).

[24]   Herbst Decl. ¶ 3(c).

[25]   Herbst Decl. ¶ 4.

could receive care.[26]  Further, the hearing was suspended for 20 minutes because of Glock Sr.'s health.[27]

Most recently, in an Austrian proceeding brought by Glock Sr. to revoke *inter vivos* gifts given to his son (Robert Glock) because of "gross ingratitude,"[28] Glock Sr.'s attorney stated that Glock Sr. was unable to appear before the Regional Court in Vienna.  As a result, he testified via videoconference from the District Court in Villach on January 15, 2015.[29]  Glock Sr.'s testimony was halted after approximately two hours because of his deteriorating condition.  His doctor was present during the testimony and constantly observed Glock Sr.[30]

This evidence demonstrates the substantial effects Glock Sr.'s and Ms. Glock's health conditions have presented in the recent past and present—whether because of age, infirmity, or illness.  These are the exact problems that would interfere with or prohibit entirely their ability to testify at trial in this matter.  Such problems can only be expected to increase with time.  Court

---

[26]  Herbst Decl. ¶ 5.

[27]  Herbst Decl. ¶ 5.

[28]  Miklautz Decl. ¶ 3 & Ex. A.

[29]  Herbst Decl. ¶ 6; Miklautz Decl. ¶ 4-5.

[30]  Miklautz Decl. ¶ 6.

proceedings in Austria—even within the last thirty days—have been modified, delayed, or cancelled.  These events underscore the urgency of ensuring that the testimony of Glock Sr. and Ms. Glock not be lost because of the illness or death of either.    Given the expected length and breadth of their trial testimony (and Glock Sr.'s apparent inability to be questioned for more than a couple of hours at a time), preservation depositions could take several *weeks*.

**B.    The Federal Rules Permit the Depositions of Managing Agents.**

The Federal Rules provide broadly that any person can be deposed—including "any person associated with [a] corporation and acquainted with the facts."[31]  "Further, a subpoena need not be issued if the person to be deposed is a party, officer, director, or managing agent of a party."[32]

Though the terms "officer" and "director" are straightforward, whether an individual is a "managing agent" of a corporate party is a "fact-specific inquiry."[33] Courts often look to several factors to make this determination:

---

[31]  8A Wright, Miller & Marcus, *Federal Practice and Procedure:*  Civil 2d § 2103 (1994 & West Supp. 2008); Fed. R. Civ. P. 30(b)(1).

[32]  *Calixto v. Watson Bowman Acme Corp.*, 2008 U.S. Dist. LEXIS 112372, at *5 (S.D. Fla. 2008) (citing 8A Wright at § 2107).

[33]  *Calixto*, 2008 U.S. Dist. LEXIS 112372, at *5.

> (1) whether the agent's interests are identified with those of the principal; (2) the nature and extent of the agent's functions, responsibilities, and duties; (3) the extent of the agent's power to exercise judgment and discretion; and (4) whether any person or persons higher in authority than the deponent were in charge of the particular matter or possessed all of the necessary information. [34]

Even where an individual is not found to be a managing agent for the corporate litigant with respect to his everyday duties, he may still be considered a managing agent for the limited purpose of giving testimony relevant to the facts of the particular dispute.[35]  Moreover, "close questions" as to whether an individual qualifies as a managing agent "are to be resolved in favor of the party seeking the deposition, since the use of his or her testimony at trial can be resolved subsequently."[36]

The proposed deponent need not be the corporation's managing agent at the time of the deposition.  As long as the intended deponent's interests continue

---

[34]  *Bianco v. Globus Med., Inc.*, 2014 U.S. Dist. LEXIS 28464, at *5 (E.D. Tex. 2014) (citing 7 James. Wm. Moore, *Moore's Federal Practice* § 32.2[2][a]).

[35]  *Magdalena v. Toyota Motor Corp.*, 2012 U.S. Dist. LEXIS 178666, at *3-4 (S.D. Fla. 2012) (citing *Tomingas v. Douglas Aircraft Co., Inc.*, 45 F.R.D. 94, 96-97 (S.D.N.Y. 1968)).

[36]  *Magdalena*, 2012 U.S. Dist. LEXIS 178666, at *3 (citing *Zurich Ins. C. v. Essex Crane Rental Corp.*, 1991 U.S. Dist. LEXIS 863, at *4 (S.D.N.Y 1991).

to be aligned with those of the corporate litigant, it is sufficient to show that the deponent served as a managing agent at the time of the events relevant to the allegations in the complaint.[37]  The basis for this principle is straightforward:  it is "to protect a party from the admissions of a disgruntled former employee."[38] "[T]he paramount test" is therefore:  "Can the witness be expected to identify himself with the interests of [the corporate defendant] rather than those of the other party?"[39]

In *Calixto*, the plaintiff owned a patent and trademark that covered a well-known expansion joint used in the construction industry.[40]  He alleged that corporate defendant WABO had tortiously interfered with his negotiations to sell the patent and trademark to a company called CRT.[41]  Calixto sued WABO and

---

[37]  *Calixto*, 2008 U.S. Dist. LEXIS 112372, at *6.

[38]  *Independent Productions Corp. v. Loew's Inc.*, 24 F.R.D. 19, 25 (S.D.N.Y 1959).

[39]  *Calixto*, 2008 U.S. Dist. LEXIS 112372, at *6 (citation and quotation marks omitted).

[40]  *Id*. at *3.

[41]  *Id*. at *4.

noticed the deposition of Markus Burri, as its managing agent.[42]  When WABO refused to produce Burri, Calixto moved to compel.

WABO objected to the motion on the grounds that, although Burri had participated in the relevant negotiations and had previously served as the company's CEO, he no longer had any official company position and was not named as a defendant in the litigation.[43]  WABO further argued that, because Burri lived in Switzerland, he could not be deposed without his consent or service through the Hague Convention.[44]  The district court disagreed on both fronts.  It granted the motion to compel Burri's deposition.[45]

The court noted that a party seeking to depose a managing agent typically bears the burden of presenting "enough evidence to show that there is at least a close question whether the proposed deponent is the managing agent" of a corporate defendant.[46]  However, "a determination that the witness is a managing agent may be made provisionally . . . while awaiting the deposition testimony

---

[42]  *Id*. at *1.

[43]  *Id*. at *4.

[44]  *Id*. at *9.

[45]  *Id*. at *12.

[46]  *Id*. at *5.

before determining whether the witness is an agent for purposes of binding the corporation."[47]  The *Calixto* court thus determined that one of the key reasons to compel a deposition of the proposed managing agent was to determine the extent to which his interests were still aligned with those of the corporation and to illuminate his present role there at the company, if any.[48]  Such reasoning is entirely applicable here.

**1.    Glock Sr. Is a Managing Agent of Glock, Inc. and Consultinvest.**

There is no doubt that, at the time of the events relevant to the Complaint, Glock Sr. was a managing agent of Defendants Glock, Inc. and Consultinvest.  His interests continue to be aligned with those corporations.

Glock Sr. was and is the symbol of Glock, Inc.  The current Glock, Inc. website includes a "Heritage" page about the company's history; at the top of the page—next to a brief history—is a recent photograph of Glock Sr.[49]  Glock Sr. regularly occupied homes in the Atlanta area that were purchased for his benefit.[50]

---

[47]    *Id*. (citation and internal quotation marks omitted; omission in original).

[48]    *Id*.

[49]    http://us.glock.com/heritage.   A copy of this page is attached hereto as **Exhibit 1**.

[50]    Compl. ¶¶ 336-42.

More importantly, Glock Sr. has demonstrated the power to exercise control, judgment, and discretion over Glock, Inc. and Consultinvest.  The nature and extent of his functions and responsibilities make it clear that he is their managing agent.  Glock Sr. personally directed the creation of Glock, Inc. in Atlanta in 1985.[51] He served as its President for more than ten years (and its Treasurer for periods of time)—including during the period relevant to this dispute.[52]  He was the sole director of Glock, Inc. for a period of time and continued as a board member even after other members were appointed.[53]  As late as November 2005, Glock Sr. still had the authority to sign on Glock, Inc.'s bank accounts in unlimited amounts (as did Ms. Glock), even though he was no longer an officer or director.[54]

---

[51]   Compl. ¶ 106; **Exhibit 2**, Jan. 4, 2000 Affidavit of Peter S. Manown ¶ 1.

[52]   Compl. ¶ 107.  *See, e.g.*, **Exhibit 3**, 7/31/88 Consent action of Sole Director; 3/31/89 Consent of Sole Director; 3/31/90 Consent of Board of Directors.

[53]   **Exhibit 3**, 12/12/85 Consent of Board of Directors; 2/15/87 Consent Action of Sole Director; 3/31/87 Consent Action of Shareholders; 7/31/88 Consent Action of Sole Director; 3/31/89 Consent of Sole Director; 3/31/90 Consent of Board of Directors; 11/30/92 Consent of Shareholders; 2/1/96 Consent of Board of Directors; 5/19/03 Consent of Shareholders/Directors.

[54]   **Exhibit 3**, 2/17/04 Consent of Directors/Shareholders; 11/1/05 Consent of Board of Directors.

Funding and direction for Glock, Inc. came from Glock Ges.m.b.H., of which it was (originally) a wholly-owned subsidiary.[55]  At one point, Glock Sr. personally and directly owned 50% of Glock, Inc.[56]  As Ms. Glock has made clear in defending against one of the proceedings in Austria brought against her by Glock Ges.m.b.H.,

> [Glock Ges.m.b.H.] cannot be separated from Ing. Gaston Glock [Sr.].  He is a co-founder of [Glock Ges.m.b.H.] and has managed it for decades.  He is its sole Managing Director with independent power of representation . . . .[57]

With regard to Consultinvest, Glock Sr. directed that the company be created in the first place.[58]  He held signing authority over certain of its bank accounts for many years.[59]  Glock Sr. owned 100% of Consultinvest through his ownership of Defendant CON Holding, Ges.m.b.H.[60]  Glock Sr.'s close ties to Consultinvest continue to this day; as American counsel recently stated:

---

[55]  Compl. ¶¶ 120-21, 123-125; **Exhibit 2**, Jan. 4, 2000 Affidavit of Peter S. Manown ¶ 1.

[56]  Compl. ¶ 125; **Exhibit 4**, Feb. 24, 2012 Testimony of C. Guevara (Cobb Cnty. Super. Ct. Crim. File No. 09-9-26-3) ("Guevara Testimony"), 708:24 to 709:18.

[57]  ECF No. 63-1, at 10.

[58]  Compl. ¶ 309; **Exhibit 2**, Jan. 4, 2000 Affidavit of Peter S. Manown ¶ 3.

[59]  Compl. ¶ 309.  *See also e.g.,* **Exhibit 5**, Corporate Authorization Resolution.

[60]  Compl. ¶¶ 144, 317 & Ex B (ECF No. 1-2).

"Anything that takes value from Consultinvest also takes value from" Glock Sr.[61] Ms. Glock is not aware of anyone more senior or with more knowledge than Glock Sr. who could provide testimony on the facts alleged in the Complaint.

Moreover, Glock Sr.'s interests are aligned with Glock, Inc. and Consultinvest.  In a criminal proceeding Glock Sr. filed against Ms. Glock in Austria, he claims that the allegations of the Complaint "have damaged not only [his] public image but the opportunities for his professional advancement."[62] Glock Sr. alleges that Ms. Glock committed slander and damaged his credit reputation because of the allegations in the Complaint in this action, asserting

> [t]he only goal of the Complaint is to damage [Glock Sr.]. [Ms. Glock] wants to damage and erode the reputation of [Glock Sr.] so she gets monies which she is not entitled to.[63]

Glock Sr.'s criminal complaint against Ms. Glock demonstrates that he has reviewed and considered the Complaint in this action.  He would suffer no

---

[61]   Compl. ¶¶ 143, 315; **Exhibit 6**, June 25, 2010 email from Core to Butters, Harrison, at 4.

[62]   ECF No. 58-2, at 8 (Glock Sr. v. Helga Glock criminal complaint).

[63]   ECF No. 58-2, at 6, 7.

prejudice from having his testimony about that Complaint taken in order to preserve it for trial.

Further, the president of Glock, Inc. made the decision to retain the Core Law Firm, PLLC (a law firm in Washington, DC), whose principal, Robert Core, was providing legal services to Glock Sr.[64]

Glock Sr.'s personal attorney, Michael Enzinger, submitted affidavits in support of Glock, Inc. and Consultinvest's Motion for International Abstention—despite the fact that Glock Sr. himself has not been served or appeared in this action.[65]

## 2.    No Resort to the Hague Convention Is Necessary to Glock Sr. as a Managing Agent.

In *Calixto*, the proposed deponent—a resident of Switzerland—was a managing agent of the corporate defendant.  Although the corporate defendant argued that service of the proposed deponent through the Hague Convention (to which Switzerland is a signatory) was necessary in order for the deposition to

---

[64]  **Exhibit 4**, Guevara Testimony at 729:3 to 730:19.  *See also id.* at 730:10-12 ("Mr. Core was providing services to Mr. Glock already, and at some point last year [*i.e.*, 2011] the company president [of Glock, Inc.] ask me to start dealing with him [Core] directly here from the U.S."); *id.* at 737:8-11.

[65]  ECF Nos. 45-10, 63-1.

take place, the district court was not persuaded.  Foreign law "does not deprive an American court of the power to order a party subject to its jurisdiction to produce evidence" for a domestic action.[66]  Exclusive reliance on foreign law in such cases "could frustrate even the most routine of discovery tasks, such as interrogatories and depositions" and should therefore be avoided.[67]  Because the proposed deponent was a managing agent of the corporate defendant, he was subject to the court's jurisdiction.

As in *Calixto*, this Court's jurisdiction over Glock, Inc. and Consultinvest is clear.  So too is Glock Sr.'s status as a managing agent of both companies.  Because Glock Sr.'s knowledge about the complex scheme alleged in the Complaint is unique, his testimony is essential for trial.  The loss of such evidence would substantially prejudice Ms. Glock.

## C.    Glock Sr.'s Deposition Is Expected to Take a Substantial Number of Hours to Complete.

Glock Sr.'s testimony is crucial for multiple reasons—not least of which is the authentication of hundreds of documents, some of them dating back decades.

---

[66]    *Calixto*, 2008 U.S. Dist. LEXIS 112372, at *10 (citing *Société Nationale Industrielle Aerospatielle v. U.S. Dist. Ct. for S.D. Iowa*, 482 U.S. 522, 544 n.29 (1987)) (internal quotation marks omitted).

[67]    *Calixto*, 2008 U.S. Dist. LEXIS 112372, at *10.

It is also expected that his testimony will require a translator. Moreover, as evident from the course of proceedings in Austria, Glock Sr.'s failing health apparently limits his ability to provide testimony for more than about two hours at a time. During his most recent testimony, his condition was constantly monitored by his physician.[68] These factors will make preserving Glock Sr.'s testimony a slow and disruptive process.

As a result, Ms. Glock requests leave to notice forty hours of testimony from Glock Sr. for preservation purposes. Ms. Glock will agree to take such a deposition in Austria, so that the burden of travel on the deponent will be alleviated. Because Glock Sr. has thus far refused to accept serve and has used this litigation as a basis to file both criminal and civil actions against Ms. Glock in Austria, Ms. Glock further requests that the Court order that Glock Sr.'s preservation deposition take place before she provides her testimony. This is specifically to avoid the problem of the Court ordering the deposition, but of Glock Sr. failing to appear—particularly if Ms. Glock is deposed first.

After Glock Sr.'s preservation deposition has been completed, Ms. Glock will make herself available for preservation deposition testimony at a mutually-

---

[68]    Miklautz Decl. ¶ 6.

agreeable place and time, to all Defendants (whether served or unserved) without prejudice to any defenses they may have based on service, jurisdiction, or venue. Under Rule 804 of the Federal Rules of Evidence, however, the admissibility of such testimony is not dependent on whether any given Defendant chooses to cross-examine Ms. Glock.  The plain language of the statute requires only the opportunity.  If this were not the rule, an adverse party could thwart the admissibility of deposition testimony at will simply by not showing up.

If either Glock Sr. or Ms. Glock is available at trial, the trial testimony would be used in lieu of the preservation deposition testimony.  The risk of loss of evidence, however, is high and threatens substantial prejudice.  This can be avoided by permitting the preservation depositions Ms. Glock seeks here.

## <u>CONCLUSION</u>

For the reasons set forth above, Ms. Glock respectfully requests that the Court grant this motion and give her leave to notice the deposition of Glock Sr. and for her own deposition to be taken so that evidence central to this dispute can be preserved for trial.

Respectfully submitted, this 13th day of February 2015.

/s/ John Da Grosa Smith
John Da Grosa Smith
jdsmith@smithlit.com
Georgia Bar No. 660946

Kristina M. Jones
kjones@smithlit.com
Georgia Bar No. 435145

Smith LLC
1320 Ellsworth Industrial Blvd.
Suite A1000
Atlanta, GA 30318
Tel: 404-605-9680
Fax: 404-935-5226

*Attorneys for Plaintiff Helga Glock*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel certifies that the foregoing *STIPULATED MOTION TO EXTEND DEADLINES* was prepared in Times New Roman, 14 point font, in accordance with Local Rule 5.1.

/s/ John Da Grosa Smith

John Da Grosa Smith
jdsmith@smithlit.com
Georgia Bar No. 660946

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HELGA GLOCK,

          Plaintiff,

     v.

GASTON GLOCK SR., et al.,

          Defendants.

Civil Action No. 1:14-cv-03249-TWT

## CERTIFICATE OF SERVICE

I, John Da Grosa Smith, hereby certify that on February 13, 2015 I caused to be electronically filed the foregoing *MOTION FOR LEAVE TO TAKE PRESERVATION DEPOSITIONS* with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to all counsel of record.  I further certify that on February 13, 2015, I caused a copy of the foregoing to be sent by email to

                   Peter S. Manown
                   peter.manown@comcast.net

                   /s/ John Da Grosa Smith

                   John Da Grosa Smith
                   jdsmith@smithlit.com
                   Georgia Bar No. 660946