1          IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF GEORGIA
2                     ATLANTA DIVISION

3
    HELGA GLOCK,                    )
4                                   )
              Plaintiff,            )
5                                   )
    -vs-                            )   Case No. 1:14-CV-3249-TWT
6                                   )
    GASTON GLOCK, SR., et al.,      )   March 18, 2015
7                                   )   Atlanta, Georgia
              Defendants.           )   11:00 a.m.
8   _____)

9

10

                TRANSCRIPT OF THE MOTIONS HEARING
11       BEFORE THE HONORABLE THOMAS W. THRASH, JR.,
                  U.S. DISTRICT COURT JUDGE
12

13

    APPEARANCES OF COUNSEL:
14
    On behalf of the Plaintiff:    John Da Grosa Smith
15                                 Kristina M. Jones
                                   SMITH HORVATH, LLC
16
    On behalf of the Defendants:   Tiana S. Mykkeltvedt
17                                 Ronan P. Doherty
                                   BONDURANT MIXSON & ELMORE, LLP
18

19

20

21       *Proceedings recorded by mechanical stenography*
            *and computer-aided transcript produced by*
22
                    SUSAN C. BAKER, RMR, CRR
23                   2194 U.S. COURTHOUSE
                    75 SPRING STREET, S.W.
24                   ATLANTA, GA  30303
                      (404) 215-1558
25

```
 1              (Proceedings held in Atlanta, Georgia, March 18,
 2      2015, 11:00 a.m., in open court.)
 3              THE COURT:  All right.  This is the case of Helga
 4      Glock versus Gaston Glock, Sr. and others, Case Number
 5      14-CV-3249.
 6              First let me ask counsel for the parties to identify
 7      yourselves for the record and the parties you represent
 8      beginning with the Plaintiff.
 9              MR. SMITH:  Morning, Your Honor.  John Da Grosa Smith
10      on behalf of Plaintiff Helga Glock.
11              THE COURT:  Morning, Mr. Smith.
12              MS. JONES:  Kristina Jones for Plaintiff Helga Glock.
13              THE COURT:  Good morning, Ms. Jones.
14              MR. DOHERTY:  Morning, Your Honor.  Ronan Doherty on
15      behalf of Glock, Inc.; Consultinvest; Karl Walter; Fitox; and
16      that is it -- and Glock Hong Kong.  Excuse me.
17              THE COURT:  Good morning, Mr. Doherty.
18              MS. MYKKELTVEDT:  Tiana Mykkeltvedt on behalf of the
19      same Defendants.
20              THE COURT:  Good morning, Ms. Mykkeltvedt.
21              All right.  This is a hearing on two motions.  The
22      first is the Plaintiff's motion for discovery of the In Re HMG
23      production.
24              Mr. Smith, that's your motion; so I will hear from
25      you first.
```

1            MR. SMITH:  Morning, Your Honor.

2            Are we prepared to address both of the pending

3    motions, the *In Re HMG* as well as the --

4            THE COURT:  Well, I think my preference would be to

5    do them separately.  But, yes, I am going to hear both the

6    motions this morning.

7            MR. SMITH:  Does the Court have a preference for

8    which we begin with?

9            THE COURT:  No.

10           MR. SMITH:  If I could begin, Your Honor, with the

11   motion to preserve testimony for trial --

12           THE COURT:  Fine.  That's fine.

13           MR. SMITH:  -- that's pending.  And I have got some

14   additional materials and authorities if I could pass them up,

15   and I did provide a copy to counsel this morning of those

16   additional materials.

17           If I may approach?

18           THE COURT:  Fine.

19           MR. SMITH:  Thanks.  I also have an extra copy for

20   your clerk as well.

21           Thank you.

22           Your Honor, the motion to preserve the testimony of

23   two central players in this dispute, Gaston Glock, Sr. who is

24   presently 85 years old and the Plaintiff, Helga Glock, who is

25   currently 79 years old.  The filing that we have submitted to

1     the Court includes affidavits and other evidence of record

2     demonstrating that both Mr. Glock and Mrs. Glock have had

3     health issues that have limited their ability to testify in

4     certain proceedings that are pending in Austria, plus also

5     establishing the advanced age.  And throughout the briefing,

6     Your Honor, there's been a back and forth about whether these

7     would be trial preservation depositions, whether they should be

8     viewed under the regular discovery depositions and what the

9     Court's power and ability is to indeed preserve that testimony

10    if indeed the Court was inclined to do so.

11         So I think what we have is the issue is we have got

12    two folks that I think it's indisputable are central to this

13    dispute.  This dispute is complex, and certainly I don't think

14    -- at least we don't assume -- it's going to be over in a short

15    period of time.  One of those witnesses is 85 years old, and

16    one is 79.  And both have had illnesses that have prevented

17    them from testifying at times and has been documented.

18         The Plaintiffs believe that the Court has powers to

19    order the depositions of those parties at this time in order to

20    ensure that any evidence they have that's material to this

21    dispute is preserved for the purposes of trial in the event

22    that there is a trial.  Defendants seem to believe that the

23    Court does not quite have that power at this time because a

24    complaint has only been filed, there's not been a motion to

25    dismiss filed yet, and no answer has been filed yet.  The Court

1    hasn't made those initial determinations.  And the parties

2    haven't had a Rule 26(f) conference yet to talk about it; and,

3    therefore, discovery hasn't officially begun under Rule 26.

4           The Plaintiff's perspective on that, Your Honor, is

5    that if you have got material witnesses who have got material

6    evidence and there's reason to believe that that testimony

7    might not be present at the time that it's needed the Court has

8    broad discretion and the power to make a decision of whether it

9    makes sense to order those depositions.  And at that point, the

10   Court would, of course, need to weigh the prejudice and

11   imposition to the Defendants against the benefit of potentially

12   -- of preserving that evidence.

13          And in thinking about the position that has been

14   cited in the opposition paper, primarily that it would be

15   unfair because a motion to dismiss hasn't been filed, you know,

16   I thought to look at two separate things that are not mentioned

17   in our reply brief that I know we filed yesterday; and I

18   provided these three authorities just to counsel this morning.

19   One of them is Rule 27; and Rule 27 is a provision of the

20   Federal Rules of Civil Procedure, Your Honor, that is entitled

21   Depositions to Perpetuate Testimony.  And that particular

22   provision and rule enables the Court in the filing of a mere

23   petition to order depositions to be taken even though a matter

24   has not even been filed.

25          And when we are talking about the potential prejudice

1    in this instance where there's been an extensive complaint

2    already filed and it is of record, the Rule 27 deposition would

3    actually occur before any complaint has been filed, before any

4    allegations have been pled and before any causes of action have

5    actually been raised.  And the courts that have interpreted

6    Rule 27 and applied it have actually done it in two ways.  The

7    majority -- the majority of times that it's been applied in our

8    view are instances where a person is aged and/or sick and you

9    need to preserve the testimony, or there has also been times

10   when the court has actually granted it because there's some

11   additional information that may be needed in order to file a

12   pleading and satisfy Rule 11.

13           Our view, Your Honor, then is that in a circumstance

14   where we have a pending case and the Court is -- has a pleading

15   in front of it and there's a concern that there could be an

16   unfair prejudice we would submit to the Court that the

17   prejudice and potential prejudice in a Rule 27 situation is far

18   greater because there's no complaint even filed.  And there's

19   also some discussion in the response paper as to the proper

20   standard the Court should use.  I believe the term used was --

21   and without citation there is terms such as exigent

22   circumstances or immediate harm.  And we didn't see where those

23   standards came in under either Rule 32 or Rule 27, and there

24   was no citation to those standards.

25           But it did make me think, well, I suspect the Court

1    would want to look to a standard.  Well, in Rule 27 which is a

2    provision that enables the Court to perpetuate testimony before

3    an action has been filed, in the rule itself, Rule 27,

4    Subsection (a)(3), it states, "If satisfied that perpetuating

5    the testimony may prevent a failure or delay of justice, the

6    Court must issue an order."  And that is (a)(3) of Rule 27.

7             So in considering that, perhaps, you know, maybe

8    analogizing a Rule 27 deposition which is a deposition to

9    perpetuate testimony, preserve it in the event someone is ill

10   or elderly and the situation we find ourselves in now which is

11   less prejudicial because we actually have a complaint filed,

12   the Court may consider reviewing that testimony of whether --

13   reviewing that standard as preventing a failure or delay of

14   justice.  If the Court were to look at that standard, one way

15   to phrase the question would be in the circumstance that we are

16   presently in where there has been no motion to dismiss filed, a

17   lengthy complaint that will likely require some considerable

18   time before testimony is actually received, does the Court

19   believe that the testimony of Mr. Glock who is 85 years old and

20   has record evidence of certain illnesses that have prevented or

21   at least impeded his testimony, Mrs. Glock, our client, who is

22   79 years old who we are equally offering up, does the Court

23   believe that ordering that testimony now before motion practice

24   is determined and before discovery begins would prevent a

25   failure or delay of justice.

1        We contend that it would, Your Honor.  And the reason

2    is is that if that testimony is not available then it's gone.

3    And we found another case, Your Honor, *Texaco v. Borda*, which

4    is a Third Circuit case from 1967.  And that case does not rely

5    on Rule 27, but it cites a case that did rely on Rule 27 which

6    in *Texaco* was a case where it was a civil case and they were

7    being asked to order a deposition at a time when the case was

8    stayed.  And in that case, the court, the Third Circuit, in

9    evaluating the trial court's determination made a reference to

10   Rule 27 even though Rule 27, of course, didn't apply in that

11   circumstance because the case had been filed.  So, therefore,

12   we think that that could be an appropriate analog to perhaps

13   look at the standard that we just cited at preventing a failure

14   and delay of justice.

15        And in the *Texaco* case, Your Honor -- in the *Texaco*

16   case, it was a civil action that was brought; and there was a

17   pending criminal action.  And the court determined that in

18   light of the pending criminal action in an antitrust claim that

19   the court also described as fairly complex and complicated what

20   the court decided to do was to stay the entire civil action.

21   It's not clear from the Third Circuit opinion whether any

22   answers or responsive pleadings had been filed at that stage or

23   whether any motions had been determined, but the civil action

24   was stayed pending the conclusion of the parallel criminal

25   action.

1          The Petitioner/Plaintiff in that matter asked the

2    trial judge to permit a deposition of someone who was 71 years

3    old.  And in that instance, Your Honor, there was no evidence

4    of -- at least not in the Third Circuit opinion there was no

5    discussion of any illness and no discussion of any troubles or

6    problems testifying.  It was that the witness was 71 years old.

7    And the trial court indicated that it was going to stay the

8    entire action, and the trial court stated that it would not

9    allow the deposition at that time and that if there was any

10   evidence that this 71-year-old witness was ill or sick they

11   could come back to the court and ask the court to amend its

12   stay order.

13         In particular, Plaintiff's counsel had argued that

14   the target deponent was 71 years old.  And the trial court

15   said, "It is meaningless to say to me that Mr. Borda" -- who

16   was the proposed deponent -- "is 71 years old.  Age standing

17   alone is meaningless to me."

18         Well, the Plaintiffs appealed that and filed a writ

19   of mandamus on both the stay, the overall stay, and also on the

20   trial court's denial of their right to take the deposition.

21   And the appellate court upheld the stay finding that the trial

22   court, of course, enjoys broad discretion and can manage their

23   docket.  And the appellate court, the Third Circuit, did not

24   disrupt the trial court's determination that the matter should

25   be stayed pending the outcome of the criminal action.

1          However, with respect to the witness, the court

2     stated as follows:  "What has been said brings us to our

3     expressed view that Judge Augelli abused his discretion in

4     denying leave to *Texaco* to take Borda's deposition on his

5     reasoning that age standing alone is meaningless and that it is

6     meaningless to say to me that Mr. Borda is 71 years old.  The

7     circumstance that Mr. Borda is 71 years old is quite

8     meaningful.  It would be ignoring the facts of life to say that

9     a 71-year-old witness will be available to give his deposition

10    or testimony at an undeterminable future date when a pending

11    criminal antitrust action will have been determined and the

12    trial of a related civil action will subsequently take place.

13    It is a fact of life too that the memory of events already

14    dating back some 11 years grow dim with the inexorable march of

15    time, even on the part of one of the sunny side of the

16    proverbial three score and ten years.  It may be noted

17    parenthetically that counsel for Mr. Borda at the hearing of

18    the stay proceedings motion on October 1966 stated in

19    opposition to the motion, 'The Plaintiff, Your Honor, is 71

20    years of age which in my opinion is awfully good reason why the

21    action shouldn't be stayed.'"

22          The court then made reference to a case from 1957

23    from the U.S. Court of Appeals in the District of Columbia

24    which was decided under Rule 27.  And in that instance, the

25    citation mentioned that under Rule 27 that court authorized the

1   taking of the deposition of a 74-year-old witness stating that
2   "Mr. Stinnes seeks by this proceeding to perpetuate the
3   testimony of a person who has knowledge of certain events and
4   transactions, many of which took place years ago.  There can be
5   no certainty that this testimony will still be available when
6   the controversy is ready for litigation since the witness is at
7   present 74 years of age."
8           In the case cited from the U.S. Court of Appeals for
9   the District of Columbia, Your Honor, and as well as this Third
10  Circuit case, there is no reference to illness.  There is
11  merely the age.
12          The court then addressed the trial court's
13  perspective that, well, if the person becomes ill or if there's
14  a problem you can come back to the court and might modify that
15  order at that time.  And the Third Circuit stated that the
16  ready answer is that *Texaco* requested such modification and it
17  was denied:
18          "Judge Augelli's indicated view that he would give
19  consideration to a renewed request should Mr. Borda become ill
20  or infirm referred to by the Respondents affords little
21  nourishment to their position.  Should Mr. Borda become ill or
22  infirm, such illness or infirmity might well be of such
23  proportion as to make impossible the taking of his deposition."
24          So the *Texaco* case in the Third Circuit, Your Honor,
25  is interesting because, one, it involves a case that was

1    pending and stayed where discovery was not going forward.  And

2    in addition, Your Honor, it showed that when asked the question

3    as to whether the stay should be lifted at least as to that

4    particular witness's deposition testimony to preserve it the

5    appellate court in deciding that it should be referenced Rule

6    27.

7            In addition to the *Texaco* case, Your Honor, and in

8    addition to the Rule 27 case, we also handed up to the Court a

9    case called *Delta Quarries and Disposal, Inc.* which was in the

10   Middle District of Pennsylvania.  And that case is a case that

11   was decided under Rule 27.  And that case is not as

12   illustrative I don't believe as the *Texaco* case, but it's a

13   case where the court at least applied Rule 27.  And in that

14   instance, the witness was 57 years old; but they introduced

15   evidence of his illness, and the Court determined that in that

16   instance it would order the deposition testimony prior to the

17   filing of suit.

18           So, Your Honor, we believe that both our affirmative

19   brief as well as our reply brief coupled with an analogy to

20   Rule 27, *Texaco* v. *Borda* and *Delta Quarries* we believe supports

21   Plaintiff's position that the Court should order a deposition

22   to preserve the testimony of Mr. Gaston Glock who is 85 and as

23   well as our own client, Mrs. Glock, who is 79 to ensure that

24   that testimony and that their knowledge is available later in

25   the proceedings.

1           That's the first question as it relates to our
2    request for the Court to order the testimony.  The second piece
3    of it, Your Honor, is that at this point Mr. Glock is not -- is
4    a Defendant who has not been served.  So he is not before this
5    Court.  So the question then becomes, Your Honor, if the Court
6    were inclined to want to order a preservation deposition how
7    would we go about that.  Well, the Defendants believe that the
8    way that we would need to go about that is through the
9    procedure of letters rogatory to serve Mr. Glock in Austria;
10   and that process takes quite a bit of time.  As the Court can
11   see, he hasn't yet been served in this case and that process is
12   ongoing.  Austria is not a part of the Hague Convention.
13          The Plaintiff, however, does not share that view.
14   The rules permit the Court to order a served entity to produce
15   evidence and such evidence being in the concept of a managing
16   agent.  And in this instance, Your Honor, Glock, Inc., the
17   Georgia corporation based in Smyrna, Georgia, and
18   Consultinvest, Inc., a Georgia corporation based in Smyrna,
19   Georgia, are both served and are both before this Court.  And
20   the concept of managing agent is a more amorphous concept in
21   which the decisions that have decided it have made clear that
22   the Court should not apply strict rules such as are you an
23   officer, are you an employee.  The concept is broader than
24   that.
25          And the courts have had occasion to examine

1    circumstances where a party, corporate party was served and a

2    party in a litigation.  Then the other side asked for the Court

3    to order the deposition not through a subpoena but instead

4    through ordering that party to go ahead and produce the

5    evidence which in that instance would be the managing agent for

6    a deposition.  And when the courts have said that, Your Honor,

7    they laid out certain standards such as it's not necessarily a

8    question whether the person remains employed at that time.  The

9    issue is are their interests aligned.

10           And the question in *Calixto*, *Calixto* v. *Watson*, which

11   is out of the Southern District of Florida in 2008, that case

12   is interesting inasmuch, Your Honor, as the target deponent

13   worked for a corporation that was based in the United States

14   whose parent corporation was based in Switzerland.  And the

15   court acknowledged that the parties didn't dispute that the

16   individual who they -- was proposed to be deposed and who they

17   had asked for the court to order the corporation to produce was

18   someone who had material information and someone who was

19   involved in the underlying transactions.

20           And I think, Your Honor, based on the complaint and

21   based on the information in our papers we believe it's

22   indisputable that Mr. Gaston Glock, Sr. is central to the

23   issues present here and was the one involved with those issues

24   and in certain circumstances likely will be the only one with

25   knowledge of certain points that are of materiality to the

1    issues before the Court.  And in that case, the question was

2    can the court order a former employee of a U.S. corporation to

3    testify as a managing agent.  The other wrinkle in *Calixto*,

4    Your Honor, was that that person was not in the United States.

5    That person was in Switzerland.

6           So you have a certain -- a somewhat analogous

7    circumstance where you have a former officer of a U.S.

8    corporation who now lives in Switzerland.  And the request was

9    for the district court to order the corporation before it to

10   produce that person.  The corporation that was before that

11   court said you can't do that.  You need to -- even if you order

12   them as a managing agent which they contend that they were not

13   and the court found that that person indeed was -- but even if

14   you order that, Your Honor, the other party needs to go through

15   the Hague.

16          And what was interesting also in that case is that

17   the former officer of the United States corporation was an

18   employee of a sister company of the parent of the U.S.

19   corporation.  And what the court -- how the court described the

20   issue before it was, "The issue before the court is whether a

21   person who was a managing agent of" -- the acronym is

22   W-A-B-O -- "WABO at the time relevant to the subject matter of

23   the case but who has since transferred to a position with a

24   sister company of WABO fits within the definition of managing

25   agent such that the company can be compelled to produce

1    Mr. Burri to testify."

2              And in analyzing that, Your Honor, the court said,

3    "To make such a determination, courts focus on whether the

4    person had power regarding the matters at stake in the

5    litigation and whether the person's interests are still aligned

6    with the corporation."  The court found the first factor

7    clearly, that it had the power, that he had the power regarding

8    the matters at stake in the case.

9              "The second factor assesses the extent to which a

10   person's present interests are still aligned with the

11   corporation.  Courts attribute managing agent status to persons

12   who no longer have authority over the matters at issue and who

13   no longer hold the position of authority within the corporation

14   so long as those individuals retained some role in the

15   corporation or at least maintained interest consonant with,

16   rather than adverse to, its interests."

17             Because the former employee and managing agent worked

18   for a sister company, the court found that he was a managing

19   agent because he had exercised power during the formation of

20   the agreement and his interests are aligned.  Therefore, the

21   court found that the deposition notice under Rule 30(b)(1) was

22   appropriate and that the other party did not need to go through

23   the Hague Convention to secure his attendance at a deposition

24   -- or strike that, Your Honor -- that they found that it was

25   indeed a managing agent and did not need to go through a

1    subpoena process.

2           Going on further, the court stated that the Supreme

3    Court has explained that the statutes of another country do not

4    deprive an American court of the power to order a party subject

5    to its jurisdiction to produce evidence even though that act of

6    production might violate a statute in that foreign entity.  And

7    the court determined that because the convention will not

8    facilitate the gathering evidence more effectively than the

9    procedures already in place through the Federal Rules the court

10   ordered the corporation before it to produce that deponent who

11   it found to be both a managing agent and also subject to being

12   produced not through a subpoena or not through going through

13   the Hague.

14          Well, in this instance, Your Honor, we submit that if

15   the Court is inclined to grant the request to preserve trial

16   testimony, if the Court is inclined to believe that the

17   ordering of testimony of Mr. Glock would prevent a failure or

18   delay of justice if indeed the Court believes that Rule 27 is

19   at least a fair reference point, Plaintiff submits that the

20   Court can order Mr. Glock to appear by directing Glock, Inc.

21   and Consultinvest to produce him.  And in addition to the fact

22   that in our case as compared to *Calixto* it's not just that

23   Mr. Glock remains an employee of a sister company, Mr. Glock is

24   Gaston Glock of Glock.  Mr. Glock as recently as the filing of

25   this past month by the parent company of Glock, Inc. in Austria

```
1    stated that Mr. Glock is indeed the company's CEO.  So
2    Mr. Glock remains according to the filing the CEO of the parent
3    company.
4              And, in particular, the quote that we included in our
5    paper, Your Honor, from the motion that was filed by Glock
6    Ges.M.B.H. who is an unserved Defendant in this case and the
7    parent company of Glock, Inc. -- they served Defendant in this
8    case represented by counsel -- Ges.M.B.H. said that in
9    connection with the motion that was filed as a criticism of
10   what we have filed in this court -- and we have brought this up
11   at our last hearing that there seems to be a penchant for
12   raising defenses and criticisms of what's going on in this
13   court in Austria.
14             Well, in this instance, criticizing the facts that we
15   included about Mr. Glock's poor health in the motion before the
16   Court today, Glock Ges.M.B.H., the Austrian company and parent
17   of which he is CEO, said this:  "While doing all of this, the
18   Defendant, Mrs. Glock, knows that Gaston Glock, Sr. is not only
19   a mere CEO of Glock Ges.M.B.H. but also its eponym, founder and
20   its arched symbol in the public perception.  This is why
21   Mrs. Glock's allegations in her recent motion published on
22   PACER.gov about Gaston Glock, Sr.'s asserted poor health are
23   harmful to Plaintiff's business and credibility.
24             In addition, Your Honor, we also attached to our
25   filing yesterday an excerpt from the January 2015 -- annual
```

1    2015 Glock manual.  And it's a magazine article, Your Honor.

2    It was a glossy magazine.  And in there there's an annual

3    message from the founder and includes a picture of Mr. Gaston

4    Glock as well as his signature.  And we also included, Your

5    Honor, a separate piece that was signed by Mr. Glock in that

6    same magazine of this year in his response to the death of

7    Reinhold Hirschheiter who was a former CEO of Glock, Inc.

8            So it would seem to us, Your Honor, far greater than

9    the facts in *Calixto*.  And in the other cases we cited about

10   managing agent, it's Plaintiff's position that Mr. Glock as the

11   CEO of Ges.M.B.H. he is still speaking on behalf of all the

12   Glock entities.  It is our position, Your Honor, that even

13   though it's not required to prove that he is a managing agent

14   today in order to establish that standard that we believe that

15   Mr. Glock indeed is speaking on behalf of the company.  No one

16   is higher than Mr. Glock in that company and that the evidence

17   even saying that he is the arched symbol, founder and eponym,

18   they are saying that right now at the same time they are making

19   allegation in this court that he doesn't satisfy the lower

20   managing agent standard.

21           So, Your Honor, in closing, it is Plaintiff's

22   position that the Court has an opportunity and the ability to

23   order a trial preservation deposition to protect against any

24   loss of evidence as this case progresses by ordering the

25   deposition of Mr. Glock.  Mrs. Glock also if the Court were

1    inclined has offered to and is willing to submit to the same

2    proceeding and is willing to come over to the United States to

3    do that.  She indeed filed her case here, and she would make

4    herself available here to have a -- be deposed.

5              And in our paper, we indicated, Your Honor, that the

6    right to conduct that examination that we would agree that

7    that's without regard to any waiver of any rights of

8    jurisdiction or venue or any other defenses that the Defendants

9    may wish to raise substantively in this case so that both

10   parties can have their testimony preserved.  And it's our view,

11   Your Honor, that if the Court is inclined to do that that

12   clearly the evidence of this case satisfies more than

13   sufficiently the managing agent standard and that the Court

14   could direct either Consultinvest or Glock, Inc. or both to

15   produce Mr. Glock as evidence.

16             And there's one final point, Your Honor.  Counsel has

17   also submitted an affidavit from Mr. Guevara who is corporate

18   secretary and counsel for Glock, Inc. indicating that he has no

19   control over Mr. Glock in words to that effect.  We'd submit,

20   Your Honor, that in the cases that we have seen and in the

21   standards that we have seen that whether or not they can

22   produce Mr. Glock is not a factor for the Court to consider in

23   determining whether or not he is a managing agent and whether

24   or not that that person can be compelled through the

25   corporations before the Court.  It would seem to us, Your

1    Honor, that if that factor became relevant at all it would be

2    if the Court did, in fact, order the deposition of Mr. Glock,

3    did, in fact, order the current Defendants to produce Mr. Glock

4    and that he didn't show up then at that point in connection

5    with a motion to compel or other appropriate motions it would

6    seem that that issue would then become a factual determination.

7         If the Court has -- unless the Court has any

8    questions on that particular motion, that's all we have on that

9    motion.

10        THE COURT:  Mr. Doherty?

11        MR. DOHERTY:  Good morning, Your Honor.

12        The Plaintiffs -- or excuse me -- the Defendants see

13   things quite differently as I suspect wouldn't surprise the

14   Court.  Helga Glock has filed her complaint here in our view

15   seeking to litigate her Austrian divorce in this court, but we

16   are here again now for a second hearing where Ms. Glock does

17   not want to follow the Federal Rules that apply in this court.

18   She first wants to defer the first step in any civil action by

19   having the Court state any consideration of the Defendant's

20   motions to dismiss.  So she wants to proceed before she has

21   established and the Court has confirmed that there is any

22   viable claim on which to conduct discovery at all here.

23        So while she puts the Defendants on hold, she wants

24   to rush ahead and have the Court expedite her discovery

25   efforts.  We are going to talk in a moment about her requests

1    for documents.  But first we have --

2              THE COURT:  Now, as I recall, the last time we were

3    here I didn't rule on either side's motion to stay.  I didn't

4    rule on the Plaintiff's motion to stay.  I didn't rule on the

5    Defendant's motion to stay for international comity.

6              Am I correct or incorrect about that?

7              MR. DOHERTY:  You are absolutely correct about that.

8              THE COURT:  All right.  So both motions are still

9    pending?

10             MR. DOHERTY:  Those motions are still pending.

11             THE COURT:  All right.

12             MR. DOHERTY:  Where we are today in the wake of those

13   motions that are with the Court we have stipulations that Helga

14   Glock has agreed to that have been submitted to the Court and

15   entered as orders providing a briefing schedule for the motion

16   to dismiss that comes after a ruling on the motions to stay.

17   If those go forward -- or excuse me.  If those motions are

18   denied, 30 days after that the Defendants will file their

19   motions to dismiss.  Those stipulations also defer all

20   discovery in this case.

21             So Ms. Glock has agreed to put off discovery and the

22   Rule 26(f) conference until all that's done.  But we are here

23   today with two requests for her to be able to rush ahead with

24   discovery in the interim while the Defendants must wait to file

25   their motions to dismiss.

1          Now, obviously, as the Court noted, we moved to stay

2     based on abstention.  And if that doesn't prevail, we will move

3     to dismiss.  But if we are going to proceed in this court, the

4     Defendant's position is that Helga Glock should have to

5     litigate according to the rules.  And at the most basic level,

6     that means that the Defendants ought to be able to proceed with

7     their case in their motions before she gets the discovery and

8     that she should serve all the Defendants in this case before

9     taking discovery that will then be argued to bind them later in

10    the case.  And litigating by the rules means most fundamentally

11    that she shouldn't be allowed to take discovery before she

12    shows that she has a viable claim here.  And, finally, she

13    should also adhere to her own stipulations and the Court's

14    orders on the scheduling.

15         Now, Ms. Glock says that these requests are justified

16    by the special circumstances of this case.  But it's clear that

17    the discovery she wants to do here, both taking 40 hours of

18    deposition of her ex-husband in Austria and to get her U.S.

19    counsel access to half a million pages of confidential

20    financial records, that's not about preserving testimony;

21    that's about improving the complaint that's already before the

22    Court.  I mean, the Plaintiff's position is that she should not

23    have to respond to the Defendant's motions without the benefit

24    of those documents.  And, Your Honor, your rules about

25    presenting trial testimony I think are fairly inconsistent with

1     the idea that anyone would get to play 40 hours of trial

2     testimony.   The Defendant's perspective, Your Honor, on this is

3     that this is a fishing expedition looking for a claim because

4     Ms. Glock knows that the claim she has is very unlikely to

5     withstand a motion to dismiss.

6             Now, you mentioned the abstention motion.   We think

7     that this request for 40 hours of deposition only gives further

8     grounds and confirms the grounds for abstention.   Deposing

9     Mr. Glock for 40 hours would be at odds with the Federal Rules

10    which generally provide for 7 once he is a party to the case.

11    You know, deposing an Austrian citizen against his will in

12    Austria is also at odds with Austrian law.   As the Plaintiff

13    points out, there are cases that say that it can't be done that

14    way.

15            But Ms. Glock's filings confirm, you know, what is

16    different from every other case that she cites in her brief is

17    that there are multiple proceedings going on between these

18    parties already in Austria.   Her filings and what she has put

19    -- the records she has put in front of the Court to confirm the

20    idea that we need to preserve this testimony at all confirm

21    that the Austrian courts are taking testimony from both

22    Mr. Glock and Helga Glock.   And that process has been -- the

23    Austrian litigation has been going on for three years.   The

24    Austrian courts are, you know, managing the taking of testimony

25    under the appropriate circumstances for these witnesses.   They

1    have been engaged in that now for years.

2           For Ms. Glock to come now and ask this Court to throw

3    the never-ending deposition on top of all that imposes the risk

4    of conflicting discovery requirements in those cases,

5    conflicting direction from the judges.  It's the very comity

6    problem that our motion to abstain gets at.

7           And our brief cites to a case from the United States

8    Supreme Court, *Societe Nationale Industrielle Aerospatiale*

9    *versus the U.S District Court for the Southern District of*

10   *Iowa*, that warns about this problem in very stark terms.  When

11   U.S. litigants try to take discovery from foreign nationals,

12   that imposes comity risks.  Now, in some cases, you have to

13   accept those risks because this would be the only litigation.

14   It's the only opportunity to get that.  But that is quite

15   simply not the case here.  These parties have able teams of

16   lawyers working away in Austria preserving each other's

17   testimony.  Therefore, there is no justification to depart from

18   the Federal Rules here.

19          At bottom -- this gets to the documents a little bit,

20   and I will defer most of that conversation.  But at bottom what

21   Ms. Glock is trying to do here is litigate her rights as an

22   Austrian spouse, the founder of an Austrian privatstiftung and

23   as the former shareholder in an Austrian company.  It's not

24   surprising that those issues are going to be decided by the

25   Austrian courts, and it poses real comity concerns if Ms. Glock

1    comes to this Court and asks this Court to enter different

2    relief for her or supplement that relief in this case.

3            So, again, we think these issues are being litigated

4    there.  The testimony is being preserved there to the extent

5    that that's a concern, and we think that this is just yet

6    another reason why the Court should grant the motion for

7    abstention.

8            All right.  On the depositions, first and foremost,

9    the briefing before the Court until yesterday talks about Rule

10   32(a) and why Ms. Glock ought to be able to take these

11   preservation depositions under that rule.  Until this morning,

12   that was the only rule that Helga Glock wanted to talk about;

13   and she argued that it was a diversion to look to any of the

14   other rules in the Plaintiff's brief.

15           Well, I think we should start with Rule 26(d) because

16   whether Ms. Glock wants to admit it or not she is asking the

17   Court for permission to take discovery before the Rule 26(f)

18   conference and before she stipulated she would in violation of

19   that Rule 26(d).  Depositions are a discovery device under the

20   Federal Rules; and, thus, Helga Glock needs the Court 's

21   permission to take any depositions now before the Defendants

22   move to dismiss, before they answer and before the Rule 26(f)

23   conference.  If Mrs. Glock is not asking -- if Helga Glock is

24   not asking for relief from Rule 26(d), and her papers to the

25   Court yesterday say that she is not, then there's no way for

1    the Court to grant a motion for depositions which are

2    discovery.

3          Now, there's a tussle in the brief between the

4    parties about whether it makes any difference if it's a

5    discovery deposition or a deposition to preserve testimony for

6    trial.  The Federal Rules don't distinguish between those two.

7    *Chrysler International*, an Eleventh Circuit case we have cited

8    in our brief, expressly holds that a district court did not err

9    by treating discovery and trial preservation depositions as the

10   same for purposes of scheduling.

11         Now, in a reply brief, Helga Glock argues, well, that

12   case is just about timing.  That's what we are here about today

13   is whether Mrs. Glock will ever be entitled to any depositions

14   and, if so, when is the appropriate time.

15         *Charles versus Wade* is the case that she relies on,

16   but that doesn't help her position here and it doesn't change

17   the analysis.  That case involved a request to depose a

18   prisoner which required the Court's permission under Rule

19   30(a).  The trial court said no but only because discovery had

20   already closed.

21         The former Fifth Circuit reversed that as an abuse of

22   discretion because the prisoner wasn't going to be able to

23   testify at trial and because the Plaintiff had already

24   interviewed the witness twice in prison, knew what the witness

25   was going to say and had secured the witness's agreement to

1   testify at a trial that was all to take place six weeks later.

2   So there the issue was the only way this testimony will be

3   presented at trial because the witness is in prison is through

4   this deposition, and it's clear it's not a violation of the

5   judge's discovery restraints because we already know what the

6   witness is going to say.  So *Charles versus Wade* which is what

7   they rely on principally does not help them here.

8        So in order to get where Helga Glock wants to go,

9   there has to be some reason to justify departing from the

10  Federal Rules; and her filings don't provide the factual basis

11  to expedite these depositions under Rule 26.  Again, her

12  filings confirm that the parties are taking testimony in

13  Austria.  Her filings again only show that both sides have

14  requested continuances over the three years of litigation

15  involving -- I think it's up to 14 or 15; I have lost count --

16  of the number of Austrian proceedings.  But her filings confirm

17  that Mr. Glock gave testimony weeks ago, weeks before her

18  motion in January of this year.  So there's nothing beyond

19  speculation about his health that justifies the request to

20  depose her former husband for 40 hours.

21       We have cited the case of *Echols versus Lawton* which

22  is a Southern District of Georgia case where the court refused

23  to take a preservation deposition of a witness whose health was

24  in decline because he had confirmed evidence of Stage 4

25  diabetes.  The court there refused that deposition because as

1    in this case the court hadn't ruled on the Defendant's motions

2    to dismiss.  *Echols* relied on the well-established policy now

3    of -- and this is, you know, inherent in Rule 12 and Rule 26

4    setting up the way discovery is supposed to happen in the

5    federal courts.

6            There has been a policy decision by the rule-makers

7    and confirmed by the courts.  Until the Plaintiff shows that

8    she can state a claim, the Defendant shouldn't be burdened with

9    discovery.  And that's particularly important as the Eleventh

10   Circuit has held in *Pelletier* and RICO cases like this one.

11   *Pelletier* is a lengthy, lengthy opinion from Judge Tjoflat in

12   the Eleventh Circuit about all of the mischief that can occur

13   by allowing discovery to begin in a RICO case without careful

14   attention to what might state a claim.  That mischief is

15   exactly what Ms. Glock wants to unleash here, and the Court

16   should not allow it because the record just simply doesn't

17   support the request that there is anything exigent here that

18   would require departing from the normal procedure.

19           If there is any risk to testimony here -- and there

20   shouldn't be because these parties again are giving testimony

21   in Austria -- it is because the events in the complaint are

22   ancient.  The events in the complaint are from 1985 through the

23   late '90s.  Ms. Glock's complaint alleges that these schemes

24   that she now wants to pursue in this court were disclosed in a

25   prosecution in Luxembourg in 2000.  If there is any risk that

1    testimony will be lost, it is because the memories of events

2    from the '80s and the '90s will not be as good today as they

3    were in 2000.

4           And what the Court will hear if we ever get to a

5    motion to dismiss in this case is that the Supreme Court has

6    repeatedly held that the statute of limitations in RICO cases

7    must be firmly applied because the treble damage remedy of RICO

8    is only available to a Plaintiff who acts promptly.  The law

9    does not allow a Plaintiff to do as Ms. Glock appears to have

10   done here, sit idly by and wait 15 years after these schemes

11   were supposedly disclosed and then file suit talking about RICO

12   conspiracies only after she has been divorced from the

13   Plaintiff.  So in our view, Your Honor, this motion and any

14   argument about losing testimony is only further confirmation

15   about why this case should be dismissed, not why Helga Glock

16   should be off to the races on discovery.

17          Now, this morning Ms. Glock has submitted some

18   evidence and some argument -- or, sorry -- some citations and

19   some argument to Rule 27.  And Rule 27 which she passed up

20   actually does address the question of preserving deposition

21   testimony, but it doesn't apply here.  What counsel did not

22   point the Court to is Rule 27(a)(1)(A).  In order to get a

23   deposition to preserve testimony under Rule 27, the petitioner

24   must file a certification and verified petition attesting that

25   she cannot presently bring her claim in the United States.

1          We are here today because Ms. Glock has filed a

2     350-page complaint representing to the Court under the rules

3     and under Rule 11 that she has a claim that she can pursue.

4     Ms. Glock has repeatedly said in her briefs and again to the

5     Court that, Oh, I have a viable claim that I've asserted.  That

6     complaint, the filing of that complaint and those assertions

7     mean that Rule 27 is unavailable.

8          And, you know, Your Honor, I have only gotten the

9     citation to Rule 27 this morning; so I am relying on memory

10    here.  But my recollection is that there is a binding old Fifth

11    Circuit case, *Shore versus Acands*, 644 F.2d 386, Fifth Circuit,

12    1981, that confirms that requirement for a Rule 27 preservation

13    deposition.  And if, you know, Your Honor would like to hear

14    more about Rule 27, we'd be delighted to file a supplemental

15    brief on it.

16         But the short answer is that Rule 27 does not

17    authorize the relief that Helga Glock is seeking here.  What it

18    does instead is confirm that she is not entitled to the relief

19    she is seeking here.  Rule 27 presents one way to preserve

20    testimony before a complaint is filed, and Rule 30(a)(2) also

21    provides a method for getting a preservation deposition when

22    the party or the witness was in the United States at the time

23    the complaint was filed but is leaving.  You can get one there

24    too.

25         Now, the fact that the Federal Rules specifically

1    provide for conditions under which you can get a deposition to

2    preserve evidence and that those conditions are not satisfied

3    here is good evidence that the rules do not support Ms. Glock's

4    request.  So in the end, we are left with Rule 32.  And in the

5    brief yesterday before the citation to Rule 27, Plaintiff's

6    position was you need only look at Rule 32, Your Honor.  That's

7    all this motion is about.  Everything else is a distraction.

8              Well, Rule 32 might be relevant if there were a

9    deposition transcript that we had to talk about admitting at

10   trial.  That's all that Rule 32 is about, whether or not a

11   deposition that's already been taken can be admitted against

12   the Defendants at trial.  We are nowhere near trial, and

13   Ms. Glock is putting the cart before the horse when she says

14   because the deposition I want to take might be admissible you

15   should let me take it in violation of Rule 26(d) and the rest

16   of the rules.

17             The argument about whether or not Rule 32 -- whether

18   Ms. Glock is right that the deposition would be admissible

19   under Rule 32 that is given pretty short shrift in the

20   Plaintiff's briefs, but I think there's some important problems

21   here.  Many of the Defendants, as has been acknowledged this

22   morning, haven't been served with the complaint.  Helga Smith

23   [sic] says, Oh, don't worry, they all have reasonable notice of

24   this deposition I'm asking for; and if they choose not to show

25   up, it will still be admissible against them as long as they

1    have, you know, reasonable notice and an opportunity to attend.

2            The questions left unanswered are:  How are they

3    going to find out about this deposition?  How are we going to

4    know whether they had reasonable notice?  How are we going to

5    solve those problems of unserved Defendants who weren't at the

6    deposition and who want their own counsel to ask questions?

7            Ms. Glock wants to gloss over those questions by

8    saying, well, these folks are all the same, they'll ask the

9    same questions, Mr. Glock's got lots of counsel.  But on the

10   allegations of this complaint, there are clear differences

11   between these Defendants.  We have -- I mean, one of the

12   Defendants is a Panama Charlie, a Mr. Ewert, who is sitting in

13   a Luxembourg prison because he was convicted for attempting to

14   assassinate Mr. Glock.  It's difficult to imagine two

15   Defendants with more adverse interests than those.

16           Mr. Manown is a pro se Defendant here in Georgia.  He

17   has been served.  Mr. Manown has also served a motion to

18   dismiss.  What Ms. Glock is saying is that Mr. Manown should

19   have to get on a plane, go to Austria, attend this deposition

20   even though he thinks that there's no case against him all so

21   we can preserve his testimony.  Mr. Manown is another Defendant

22   that if he doesn't appear he has pled guilty to stealing money

23   from the Glock companies.  Once again, we don't have commonalty

24   of interests.

25           And at the most fundamental level, Ms. Glock's

1    complaint alleges that Mr. Glock stole and diverted money from

2    the rest of the Defendants for 30 years.  So while it might be

3    okay to cite a case that says, well, when you have a car wreck

4    case about a drunk-driving accident and the passenger files

5    suit and takes a deposition of a witness out of state to use

6    that deposition against the driver when he shows up later on in

7    the case because the passenger and the driver both have the

8    same interests, none of these folks are in the same car.  They

9    are not driving in the same direction.  They don't have the

10   same issues with each other, against the Plaintiff.  These are

11   not problems that can be just wished away by pretending they

12   don't exist.

13          Ms. Glock's indifference -- or let me put it another

14   way.  Helga Glock wants to proceed with this deposition come

15   hell or high water regardless of the problems we may have with

16   admissibility later.  That says a lot about what we are doing

17   here.  This is not to preserve short testimony to be put on at

18   a real trial.  Forty hours is not for testimony that you

19   already know what you are going to get.  This is a fishing

20   expedition, and 40 hours of deposition for your former husband

21   is the type of tactic you would expect in a divorce case.

22   That's what I think we have here, and that's why we think it's

23   improper.

24          Finally, on the question of managing agent, as

25   counsel for Ms. Glock, I think, very accurately put it, if you

1   want to do this we will find you a way.  We submit there's no

2   reason that you should want to do this in this case and that

3   you'd have to walk over or roll over an awful lot of federal

4   rules to get there.  But the idea that Mr. Glock can be deposed

5   as the managing agent of the U.S. Defendants that's just a

6   gimmick to try and get around several problems that are in the

7   way of this deposition.

8          Mr. Glock hasn't been -- he's a party, named party;

9   but he hasn't been served with a complaint.  He is an Austrian

10  citizen living in Austria.  Plaintiff concedes that the law --

11  and we have cited *In Re Austrian Ski Accident* as the case on

12  this that's in our papers.  An Austrian resident you have got

13  to go the letters rogatory route to depose one of them.  And

14  Mrs. Glock simply hasn't carried her burden to prove that

15  Mr. Glock is a managing agent of any U.S. entity today.

16         Now, the Austrian filing she attaches to the reply

17  brief represents that Mr. -- and we have heard a lot about that

18  this morning -- that Mr. Glock represents in an Austrian filing

19  Mr. Glock founded the Austrian company Glock Ges.M.B.H.  That

20  is not the U.S. company.  The fact that he has a role there and

21  that he continues to work in Austria does not mean that he is a

22  managing agent of the U.S. subsidiaries here.

23         And one sidenote.  You have already heard from both

24  sides I will confess a lot of they are telling you this one

25  thing here, Your Honor, and they are saying something different

1    over in Austria.  And for that parallel litigation between the

2    parties in those two countries, if there is no abstention and

3    we proceed we are in for many, many years of comparing Austrian

4    filings and this court filings.  And, again, we think that's

5    unnecessary.

6            But Glock Ges.M.B.H. is another unserved Defendant.

7    So to the extent his position at that company gives anybody any

8    right to depose him, that's another unserved Defendant.  That's

9    not the U.S. companies.  There's no proof submitted that

10   Mr. Glock is currently or has been anytime in recent memory a

11   managing agent of the U.S. companies.  I mean, for example,

12   Jack Welch, he is still a symbol of G.E. to many; but he can't

13   be deposed as a managing agent of that company today.

14           The other evidence that has been submitted with the

15   reply brief is similarly very weak.  The fact that Mr. Glock

16   once used some of the same lawyers who represented Glock, Inc.

17   and Consultinvest in 2007, that doesn't make him a managing

18   agent today.  His indirect ownership of any shares in this

19   company, that doesn't make him a managing agent today.

20           But what you do have in front of you, Your Honor, is

21   an affidavit from the corporate -- the vice president,

22   secretary, general counsel of Glock, Inc. and the secretary of

23   Consultinvest.  And it provides very matter-of-factly that

24   Mr. Glock has not been an officer, director of Glock, Inc.

25   since at least May 2003.  He is not responsible for managing

1   any day-to-day operations there, and he hasn't had that

2   responsibility for years.

3           In the reply brief, Helga Glock wants to attack that

4   saying that, well, your declarant, Mr. Guevara, hasn't been --

5   wasn't at Glock before 1999 so you can't tell me what positions

6   he had beforehand.  Well, even if we spot them that point --

7   and I don't think we have to do that -- that means Mr. Glock

8   hasn't been a managing agent of Glock, Inc. and Consultinvest

9   for more than 15 years.

10          My memory of this may be a little off, Your Honor.

11  But if I recall, before you were confirmed in July of 1997,

12  Your Honor, you were in private practice.  By Ms. Glock's

13  logic, a Plaintiff can depose you as a managing agent of that

14  firm today.

15          That's not what the law is.  Absolutely not.

16          The last point that Ms. Glock made on this is that

17  what matters is that he was a managing agent at the time.  They

18  have cited a case that suggests that when there is a modest

19  difference in time, the *Calixto* case, that the Court look past

20  that.  That's what they did in *Calixto*.  I mean, that's what

21  the result was.  But that doesn't mean it should be the result

22  here.

23          We are talking decades of time that have passed since

24  Mr. Glock had any role that would approach being a managing

25  agent of these U.S. companies.  He is not an employee, not a

1    director, not a board member, hasn't been around the Georgia

2    facilities.

3           And the *In Re Honda* litigation case that we cited in

4    our brief confirms that the critical question is:  Can the

5    party in front of the Court that's going to be ordered to

6    produce a witness, can they make him show up and does he still

7    have interests that align him with the company?

8           Now, there are cases where that is true where the

9    company can produce the witness.  But this is not that case.

10   What you have in your affidavit -- and this is uncontested --

11   is that neither Glock, Inc. nor Consultinvest has the right

12   ability, power or authority to compel Mr. Glock to submit to a

13   deposition on their behalf.

14          And now we are getting at what Ms. Glock may really

15   be after here, and this is sort of the last thing that her

16   counsel said.  But we can revisit all that after you order them

17   to produce and he doesn't show up.  So what we are really after

18   here is an order from the Court against these U.S. Defendants

19   -- having a lot of trouble getting those European Defendants

20   served; but if you can just give these U.S. Defendants an order

21   that I know they can't comply with, Your Honor, we will come

22   back and see you about it then.

23          I mean, again, that's just the wrong place to be in

24   this case.  If the Court is going to expedite anything here,

25   and I would hope that it would be the motion to abstain, but if

1    you are going to expedite anything it shouldn't be -- after

2    that it shouldn't be discovery.  It should be the motion to

3    dismiss.

4         Unless you have any questions, I am going to sit

5    down.

6         THE COURT:  All right, Mr. Doherty.

7         All right.  I am going to deny the motion to take

8    depositions from Mr. Glock for preservation of evidence.  At

9    this point in time, it appears to me that what the Plaintiff is

10   really seeking is discovery from Mr. Glock and that would be

11   premature at this point in time.  The Eleventh Circuit has made

12   it very clear in the *Pelletier* case and others that discovery

13   is not to begin in a RICO case until the Plaintiff has

14   demonstrated that she, in fact, has a viable claim.  Obviously,

15   in a case like this, the Defendants are going to file motions

16   to dismiss at some point in time.  And then if the Plaintiff's

17   case survives the motions to dismiss, then discovery will

18   begin.

19        I agree with the Plaintiffs that there are

20   circumstances in which a deposition may be taken for

21   preservation of evidence, but that circumstance has not been

22   demonstrated here in my judgment.  There's ongoing litigation

23   in the Austrian courts.  Evidence is being taken in those

24   courts.  And I am not persuaded that that evidence if this case

25   goes forward might not be available to be used here.  And I am

1    particularly not willing to order Mr. Glock to appear for 40

2    hours of deposition when he has not even been served in the

3    case and other important Defendants such as the Austrian Glock

4    company have not been served and who would have an interest in

5    participating in the deposition that may be very, very

6    different from that of Mr. Glock and his attorneys.

7           And, finally, I would say that I'm not prepared to

8    order the Defendants to participate in a

9    preservation-of-evidence deposition of Mrs. Glock without them

10   having had the opportunity to engage in discovery before they

11   are required to cross-examine her in a deposition that would be

12   intended for a substitute for her testimony at trial under

13   certain circumstances.  So for those reasons, I'm going to deny

14   the motion.

15          Mr. Doherty, if you will prepare a written order

16   summarizing those rulings on the motion and get Mr. Smith's

17   approval as to form and present it to me, I'll sign it.

18          And I also don't think that I can order the American

19   companies to produce Mr. Glock as a managing agent.  It's clear

20   to me that he is not and hasn't been for years.  So for that

21   additional reason, I deny the motion.

22          All right.  Mr. Smith, next is the motion for

23   discovery of the *In Re HMG* production.

24          MR. SMITH:  Yes, Your Honor.

25          The *In Re HMG* production discovery issue is slightly

```
 1    different than the discovery ruling that the Court just made on

 2    our request to take trial-preservation depositions.  The reason

 3    that that difference is there is that the materials that we are

 4    seeking are already in the possession of our client.  And we

 5    are not -- we are in the position and understood that when we

 6    filed this case, Your Honor, certainly from a matter of

 7    strategy all the shots that came to us this morning from

 8    Mr. Doherty when you file a case and then ask for documents

 9    it's -- I'm not taking anything away from his lawyering -- but

10    not a surprise that we would hear, Well, you've just filed this

11    case that you don't believe in and need other things.  So we

12    certainly anticipated that we would hear the arguments that we

13    have heard this morning from counsel.

14         The issue, however, that we found ourselves in, Your

15    Honor, is that our client has possession of 500,000 pages of

16    material that I am not allowed to see.  I personally as her

17    lawyer and the lawyers representing her in this RICO matter

18    can't see it.  So to the extent that there is information in

19    those materials that would serve to put her on notice of

20    something where there would be a statute of limitations

21    analysis or would serve to provide her information of a claim

22    or an additional Defendant, we can't actually review that.  And

23    I suspect the Court could appreciate how uncomfortable it is as

24    counsel to bring a significant action that required significant

25    effort and diligence to bring without being allowed to look at
```

1    500,000 pages that are in their client's physical possession.

2         The ruling from the magistrate court in that matter

3    was favorable to us.  The district court reversed that decision

4    and now that -- I believe the opening brief has now been filed

5    in the Eleventh Circuit as to whether the ruling was correct

6    that counsel for Mrs. Glock cannot be added to the protective

7    order in connection with the 1782 production.

8         So now before your Court, Your Honor, this Court has

9    the ability to order discovery.  And even under Rule 26 we are

10   not looking to violate anything, Your Honor.  We are not asking

11   this Court to violate rules.  We are not trying to violate

12   rules.  Rule 26 permits the Court to issue an order if the

13   Court feels it's appropriate to allow discovery at any phase.

14   And what we believe, Your Honor, is that in this instance where

15   an effort was made to have Mrs. Glock's counsel added to the

16   protective order in the *In Re* case that matter is on appeal.

17        Now we are before this court.  And our request in

18   this court to remedy the peculiar circumstance where a client

19   has a volume of material that we believe would be directly

20   relevant but we can't look at at the early stage of the

21   proceeding before motion practice, before other matters occur

22   in this case where, for example, Your Honor, if we were to

23   later be able to have access to those documents, if motions to

24   dismiss were filed and denied and if we are proceeding and we

25   have taken discovery, we have exchanged documents and this

```
1    Court were to deny our ability now to see access to those
2    materials but the motion to dismiss were denied, and then let's
3    assume this Eleventh Circuit rules in our favor and says yes,
4    you should have been added to that protective order, we would
5    then have access to materials that could give rise to claims
6    that should be in this case.  We would need to seek the Court's
7    permission at that time to amend the complaint if it's
8    necessary.
9              And, you know, I would represent to the Court that
10   this is not in any way an effort to say let's file a case that
11   we don't think can withstand just so we can use it to go get
12   discovery.  And I recognize the Court's prior ruling, and we
13   were prepared in connection with the deposition to say you can
14   seal that deposition and not let us use it.  That was about
15   preservation.
16             This is about efficiency and about being able to
17   actually view documents that are in our client's possession for
18   which our client is deemed to have knowledge of.  And we
19   believe that at this point, Your Honor, the prejudice that the
20   Court just evaluated with respect to our request to take the
21   deposition, the prejudice that was, you know, described by
22   Mr. Doherty isn't present in this instance because the
23   materials are already in the possession of our client.
24             So the Court could simply order in this instance that
25   discovery be had, that that discovery be a production by the
```

1    Defendants, Glock, Inc. and Consultinvest, of those certain

2    500,000 pages specifically that Mrs. Glock has in her

3    possession and that the Court will deem those materials

4    produced in this case such that counsel for Mrs. Glock in this

5    case can look at them and review them as appropriate.  That

6    would avoid any prejudice to either of the Defendants of having

7    to go through the process of production.

8           Mrs. Glock then also asked, Your Honor, that in the

9    event the Court was inclined to let us view those materials

10   that the Court would consider a stay such that we be able to

11   view them and then come back to the Court with whether or not

12   we believe any amendment, if at all, is necessary and, if so,

13   the time.  And we did cite authority in those papers, Your

14   Honor, where large amounts of material were provided to counsel

15   during an active case and the court was willing in certain

16   circumstances to allow a stay for time to review.

17          So our request was simply if the Court would be

18   inclined to grant that discovery at this stage, deem it

19   produced so that they don't actually -- Defendants aren't

20   actually having to provide the production.  That would cure the

21   problem where we have filed a complaint without full access to

22   information in our client's possession and where there could be

23   claims that are either tolled by the statute of limitations at

24   this point or where it started or that other Defendants should

25   be added.  And then we'd be able to do whatever is appropriate,

1    perhaps nothing.  Perhaps there would be no amendment to the

2    complaint at all.  Perhaps there would be.  But at least the

3    knowledge of her lawyers is coextensive with that of the

4    client.

5         And it's difficult, Your Honor, to conceive of

6    another circumstance where a lawyer is in a case and the

7    knowledge of that lawyer is not coextensive with his or her

8    client on matters material to the case itself.  And, Your

9    Honor, I also would just submit to the Court that this is not a

10   way to do an end-around the 1782 ruling.  We want access to the

11   documents and believe we should have access to the materials

12   our client has.  The 1782 ruling which is on appeal at this

13   time is a question of whether or not documents that were

14   obtained pursuant to Section 1782 whether there is any kind of

15   inherent restriction on those materials such that they can or

16   cannot be provided, and that is on appeal.

17        In this instance, it's a discovery question.  And our

18   question is in this instance where our client has materials and

19   has knowledge and we are in that position of not knowing

20   everything our client knows and where that could be remedied

21   without any prejudice to the Defendants in this case as far as

22   time and production and effort before the complaint has been

23   tested we would ask that the Court order that production in the

24   manner that we described so that we can view everything our

25   client has.

1          THE COURT:  All right, Mr. Smith.

2          Mr. Doherty?

3          MR. DOHERTY:  Thank you, Your Honor.

4          I'm mindful that we have been here before and plowed

5     this field already, so I am really going to try to be brief and

6     really address the questions the Court had for me on this issue

7     last time.  The first question was the Court's observation that

8     Judge Pannell ruled that nothing in his order would preclude

9     Helga Glock from seeking the documents in the U.S. RICO action,

10    seeking them in discovery.

11         Well, that's not exactly how they have gone about it

12    here.  We don't have a Rule 34 document request or anything

13    like that.  But Judge Pannell's observation that Ms. Glock can

14    pursue these documents in discovery runs us right back to the

15    point that Your Honor has just made in the ruling on the

16    depositions.  The Eleventh Circuit decision in *Pelletier* about

17    the mischief of discovery before pruning the RICO pleadings

18    applies with equal force there if we are dealing with this

19    matter as an issue of discovery.  And if we are to follow

20    normal discovery procedures, then that means Ms. Glock should

21    have to survive a motion to dismiss before she gets to conduct

22    discovery.

23         Now, that sort of takes care of what Judge Pannell

24    left open to Ms. Glock.  But what we have here today, and as

25    counsel acknowledges, we are not asking the Defendants to

1    produce these documents.  We haven't sent a Rule 34 request.
2    We just want the documents we have deemed produced here.  But
3    that really is a request to get around the ruling in Judge
4    Pannell's court that having gotten these documents under 1782,
5    having agreed to a protective order that Judge Pannell read to
6    limit the use of those documents to the identified Austrian
7    proceedings, you can't share those with your counsel by virtue
8    of 1782 and the protective order.
9            Absent discovery requests, what Ms. Glock is doing is
10   asking for an end-around or simply another answer to the
11   question of can my U.S. counsel see these documents even though
12   there's a protective order that says he can't and even though
13   Judge Pannell has confirmed that and even though all of that is
14   now up before the Eleventh Circuit.  And that gets to the
15   second question that Your Honor had was about whether or not
16   the appeal deprived this Court of jurisdiction to award her the
17   documents.
18           And, again, having looked back at that, the *RES-GA*
19   *Cobblestone* case we have cited in our brief on this I think
20   it's pretty clear on the idea that if an issue is up before the
21   Eleventh Circuit it should not be addressed here in the
22   district court --
23           THE COURT:  Well, I think that is true if it's in the
24   same case; but I'm not really persuaded, Mr. Doherty, that that
25   rule strictly applies where you got one case over here before

1    Judge Pannell that's gone up to the Eleventh Circuit and then

2    you got a separate case in front of me involving the same

3    parties in a related dispute but it's a separate case.   The

4    Eleventh Circuit doesn't have jurisdiction of this case, Helga

5    Glock versus Gaston Glock.

6            Nevertheless, I'm bothered by the idea that the

7    Plaintiff is asking me to overturn Judge Pannell's opinion that

8    he would restrict the production of those documents to

9    Mrs. Glock's Austrian lawyers.

10           I mean, can I say something that or can I do

11   something that is inconsistent with that?

12           Yes.

13           Do I want to do that?

14           No.

15           Go ahead, Mr. Doherty.

16           MR. DOHERTY:   Well, and, I mean, I appreciate those

17   points.   I mean, a couple of reactions.   Part of the reason

18   that the Defendants suggest that we have a jurisdictional

19   problem here is in the way that this case has arrived, the way

20   that the Plaintiff has brought it.   She has appealed in the one

21   case the question of the ruling on 1782 and the protective

22   order.   And instead of following Judge Pannell's suggestion

23   that she pursue discovery which would run into the Rule 26(d)

24   *Pelletier* problems that we have spent a lot of time talking

25   about this morning, she has tried another way that really runs

1    into the teeth of Judge Pannell's order.

2            And Your Honor is correct in reading our case the

3    decisions that the district court made for which it didn't have

4    jurisdiction were in the same case.  We didn't have two cases

5    like Your Honor has outlined here.  But think of the problems

6    that will multiply if what we tell litigants is if you don't

7    like the answer you got the first time you can take your

8    chances on appeal, but go ahead and run down the hall and see

9    if you can get another answer from another court.

10           I have four little children, and they have learned

11   that trick between their mom and their dad.  You know, if you

12   don't look at the answer you like the first time, they are all

13   pretty good about getting the other one to try and consider it

14   again.  I think that's just a recipe for disaster and I think

15   it doesn't solve the problem here, Your Honor.

16           Unless you have any other questions, I am prepared to

17   sit down.

18           THE COURT:  All right.  I'm going to deny the motion

19   for discovery of the *In Re HMG* production materials without

20   prejudice, and I will state that if the Plaintiff's case

21   survives a motion to dismiss and discovery begins and the

22   Plaintiff serves on the Defendants a proper document request

23   for these materials I will order them to be produced.  I think

24   that is consistent with Judge Pannell's order.  It is

25   consistent with the rulings I have made so far that we don't

1    begin discovery until the case survives a motion to dismiss,

2    and it's consistent with the way we generally do business in

3    this court.

4            And I am not trying to tell you what to do,

5    Mr. Smith.  You can continue to pursue the appeal if that's

6    what your client wants to.  But if your case survives, you are

7    going to get the documents.

8            MR. SMITH:  Yes, sir.

9            THE COURT:  If you will prepare a written order

10   again, Mr. Doherty, present it to me, I will be -- get

11   Mr. Smith's approval as to form, present it to me, I will sign

12   it.

13           MR. DOHERTY:  Absolutely, Your Honor.  Thank you.

14           THE COURT:  All right.  That concludes the hearing.

15           Thank you very much, gentlemen.  Court's in recess

16   until further order.

17           (Proceedings adjourned at 12:17 p.m.)

18

19

20

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3    UNITED STATES DISTRICT COURT:

4    NORTHERN DISTRICT OF GEORGIA:

5

6             I hereby certify that the foregoing pages, 1 through

7    50, are a true and correct copy of the proceedings in the case

8    aforesaid.

9             This the 1st day of April, 2015.

10

11

12

13                         _____

14                         Susan C. Baker, RMR, CRR
                           Official Court Reporter
15                         United States District Court

16

17

18

19

20

21

22

23

24

25
```