IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

HELGA GLOCK,

   Plaintiff,

     v.

GASTON GLOCK, SR., et al.,

   Defendants.

CIVIL ACTION FILE
NO. 1:14-CV-3249-TWT

**OPINION AND ORDER**

This is a RICO action. The Plaintiff Helga Glock claims that her ex-husband, the Defendant Gaston Glock, Sr., orchestrated a scheme to misappropriate certain assets belonging to the Plaintiff. It is before the Court on the Defendants Consultinvest, Inc., Glock, Inc., and Karl Walter's Motion to Stay Based on International Abstention [Doc. 45]. For the reasons set forth below, the Defendants' Motion to Stay Based on International Abstention [Doc. 45] is GRANTED.

**I. Background**

In 1963, the Plaintiff Helga Glock and the Defendant Gaston Glock, Sr. ("Glock Sr.") founded Glock KG, an Austrian limited partnership[1] which originally

---

[1] Compl. ¶ 73.

"manufactured curtain rods and brass fittings for doors and windows, as well as machine gun belts and knives for the Austrian army."[2] Eventually, Glock KG also began manufacturing pistols,[3] and in 1983 it officially became Glock Ges.m.b.H. (the "Parent Company").[4] At first, the Parent Company largely sold its pistols to the Austrian Army.[5] However, it "soon found itself with the ability to produce more pistols than could be sold in Austria."[6] Thus, the Parent Company sought to tap into the U.S. market. Glock Sr. flew to Atlanta, Georgia to sign incorporation papers for a U.S. subsidiary company called Glock, Inc.[7] Glock, Inc. is based in Smyrna, Georgia and sells pistols manufactured by the Parent Company in Austria.[8] In addition, Glock, Inc. was originally a wholly-owned subsidiary of the Parent Company.[9]

---

[2] Compl. ¶ 85.

[3] Compl. ¶¶ 97, 99.

[4] Compl. ¶ 100.

[5] Compl. ¶¶ 99, 104.

[6] Compl. ¶ 104.

[7] Compl. ¶¶ 106-07.

[8] Compl. ¶ 107.

[9] Compl. ¶¶ 120-21, 177.

Initially, the Plaintiff had a 15% ownership interest in the Parent Company.[10] However, in 1999, the Plaintiff and Glock Sr. created a private foundation under Austrian law called the Glock *Privatstiftung* (the "Glock Foundation").[11] The Plaintiff transferred the vast majority of her Parent Company shares to the Glock Foundation, leaving her with only a 1% interest in the Parent Company.[12] Although the Plaintiff and Glock Sr. were co-founders of the Glock Foundation, Glock Sr. "retained, for himself only, the ability to . . . change the terms of the deed that created the foundation."[13] Eventually, Glock Sr. used this power to "remove [the Plaintiff] . . . as [a beneficiary] of the [foundation]" after their divorce in 2011.[14] Even more, Glock Sr. "sought to force the sale of [the Plaintiff's] remaining 1% ownership interest in [the Parent Company]."[15]

Furthermore, the Plaintiff alleges that Glock Sr. orchestrated a series of fraudulent transactions involving the Parent Company and Glock, Inc. which

---

[10]    Compl. ¶ 101.

[11]    Compl. ¶ 15.

[12]    Compl. ¶ 14.

[13]    Compl. ¶ 15.

[14]    Compl. ¶ 16.

[15]    Compl. ¶ 18.

ultimately depressed the value of her 1% ownership interest in the Parent Company.[16] First, the Plaintiff asserts that Glock Sr., with the help of his co-Defendants, misappropriated assets of the Parent Company. For example, she alleges that, at Glock Sr.'s direction, the Parent Company "gave away . . . 50% . . . of the ownership of . . . Glock, Inc."[17] which was "the most valuable and strategically important asset" of the Parent Company.[18] In particular, Glock Sr. ordered that 50% of the shares of Glock, Inc. be transferred to a company called Unipatent.[19] Unipatent was owned by a company called Reofin, which in turn was wholly-owned by Glock Sr.[20] Second, the Plaintiff also alleges that Glock Sr., with assistance, set up a series of shell corporations to allow "Glock Sr. and his associates" to "systematically appropriate virtually all of the income and assets of [Glock, Inc.] for themselves."[21] As the Plaintiff explains:

---

[16] Compl. ¶ 184 (The Defendants' fraudulent transactions "reduced the value of the assets held by [the Parent Company]" which in turn reduced the value of "[the Plaintiff's] ownership interests in [the Parent Company].").

[17] Compl. ¶ 124.

[18] Compl. ¶ 122.

[19] Compl. ¶¶ 188-89.

[20] Compl. ¶¶ 185, 187.

[21] Compl. ¶ 131.

> Defendants plundered hundreds of millions of dollars from Glock, Inc. by stealing funds from Glock Inc. and fraudulently transferring them to entities exclusively owned or controlled by Glock Sr. The illegal transfers of funds – which often purported to be for services or products – were, in fact, shams.[22]

The Plaintiff now brings suit against multiple parties, including Glock Sr., the Parent Company, Glock, Inc., and the Glock Foundation. She asserts that the Defendants executed a scheme in order to misappropriate assets from her, the Parent Company, and Glock, Inc., and that this amounted to a violation of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"). A number of parties, including Glock, Inc. (collective the "Defendants"), filed a Motion to Stay based on certain judicial proceedings that are underway in Austria. Since the Plaintiff's divorce from Glock Sr. in 2011, the Plaintiff has filed a number of lawsuits in Austria against Glock Sr. and other parties that are also named Defendants in this action. For example, in July of 2011, the Plaintiff brought an action in Austria "for judicial determination of her right to distribution of all worldwide marital assets and marital savings."[23] Later, in December of 2011, the Plaintiff brought a second action in Austria "for alimony and spousal support payments."[24] The Plaintiff has also brought claims

---

[22]   Compl. ¶ 176.

[23]   Enzinger Decl. ¶ 10.

[24]   Enzinger Decl. ¶ 11.

unrelated to her divorce. For example, the Plaintiff filed two lawsuits in Austria – against Glock Sr. and the Glock Foundation – relating to the gift she made to the Glock Foundation consisting of the vast majority of her Parent Company shares.[25] In addition, she initiated at least four lawsuits challenging specific resolutions of the Parent Company's General Assembly.[26] The Court must now decide whether to stay this action due to these pending Austrian lawsuits.

## II. Discussion

Generally, when a claim falls within a federal court's jurisdiction, its "obligation to hear and decide a case is virtually unflagging."[27] But in "some private international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction."[28] International abstention may be appropriate even though the proceedings abroad have not resulted in a judgment.[29] In deciding whether

---

[25]   Enzinger Decl. ¶¶ 20-21.

[26]   Enzinger Decl. ¶¶ 23-26.

[27]   Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 591 (2013) (internal quotation marks omitted).

[28]   Turner Entertainment Co. v. Degeto Film GmbH, 25 F.3d 1512, 1518 (11th Cir. 1994).

[29]   See Posner v. Essex Ins. Co., 178 F.3d 1209, 1223 (11th Cir. 1999) ("Although this case is different from *Turner* in that the German dispute had come to judgment--and by contrast little progress has been made here in the Bermuda action--the same principles expressed in *Turner* govern here."); Ungaro-Benages v. Dresdner

to abstain based on international considerations, the Court must consider three factors: (1) judicial efficiency, (2) international comity, and (3) fairness.[30] The Court will address each international abstention factor in turn. Before doing so, however, the Court must address a disagreement between the parties concerning the scope of the Plaintiff's claims in her Complaint.

The Plaintiff appears to argue that her claims stem only from the alleged injuries inflicted upon the Parent Company. Specifically, she asserts that her claims are based upon (1) the Parent Company's transfer of half of its interest in Glock, Inc. to another entity under Glock Sr.'s control, and (2) the fraudulent transactions involving Glock, Inc. The Plaintiff claims that these transactions affected the Parent Company's value which, in turn, depressed the value of her 1% ownership interest in the Parent Company. According to the Plaintiff, this case is not about her divorce from Glock Sr. or her transfer of Parent Company shares to the Glock Foundation.[31] The

---

Bank AG, 379 F.3d 1227, 1238 (11th Cir. 2004) ("[D]omestic courts consider whether to respect the judgment of a foreign tribunal or to defer to parallel foreign proceedings.").

[30] See Belize Telecom, Ltd. v. Government of Belize, 528 F.3d 1298, 1305 (11th Cir. 2008) (The Court must consider three factors in "determining whether abstention is appropriate: (1) international comity; (2) fairness to litigants; and (3) efficient use of scarce judicial resources.").

[31] Pl.'s Resp. to Mot. to Stay, at 12 ("None of [the Plaintiff's] claims is based on her transfer of her ownership interest in [the Parent Company].").

Defendants, however, contend that the Plaintiff's claims are not framed so narrowly in her Complaint. For example, they point out that in paragraph three of the Complaint, the Plaintiff alleges that the "Defendants implemented their racketeering scheme by . . . deceiving [the Plaintiff] into transferring her interest in [the Parent Company] . . . into foundations established and ultimately controlled by Glock Sr."[32] In addition, as part of her request for relief, the Plaintiff requests that the Court "[r]eorganiz[e] the entities associated with . . . Defendants' racketeering scheme, such that future . . . operations . . . may be conducted through a[n] . . . entity in which *Plaintiff's rightful ownership interest is restored*."[33]

The Court agrees with the Defendants. The Complaint, as written, does not frame the Plaintiff's claims as narrowly as she suggests. To be clear, the Complaint "is a typical shotgun pleading."[34] Shotgun pleadings "are those that incorporate every antecedent allegation by reference into each subsequent claim."[35] Such pleadings "wreak havoc on the judicial system . . . [and] divert already stretched judicial

---

[32] Compl. ¶ 3.

[33] Compl., at 339-40 (emphasis added).

[34] PVC Windoors, Inc. v. Babbitbay Beach Const., N.V., 598 F.3d 802, 806 n.4 (11th Cir. 2010).

[35] Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006).

resources into disputes that are not structurally prepared to use those resources efficiently."[36] Here, for each Count in the Complaint, the Plaintiff begins by incorporating each antecedent allegation.[37] This, naturally, includes the allegations concerning the Plaintiff's transfer of Parent Company shares to the Glock Foundation, as well as multiple other irrelevant background facts which obviously have no bearing on her claims. With this, the Court now turns to the abstention analysis.

The first international abstention factor – judicial efficiency – favors the Defendants. To determine whether abstention will advance the interest of judicial efficiency, the Court considers, *inter alia*, whether the actions involve common issues and parties.[38] Generally, the parties must be "litigating substantially the same issues in both actions."[39] The "existence of a parallel action in an adequate foreign jurisdiction must be the *beginning* . . . of a district court's determination of whether

---

[36] Id. (internal quotation marks omitted).

[37] Compl. ¶¶ 1477, 1535, 1540, 1546, 1550.

[38] See Turner Entertainment, 25 F.3d at 1522 ("Criteria relevant to efficiency include (1) the inconvenience of the federal forum . . . (2) the desirability of avoiding piecemeal litigation . . . (3) whether the actions have parties and issues in common . . . and (4) whether the alternative forum is likely to render a prompt disposition.").

[39] Royal & Sun Alliance Ins. Co. of Canada v. Century Int'l Arms, Inc., 466 F.3d 88, 94 (2d Cir. 2006).

abstention is appropriate."[40] Here, based on the allegations in the Complaint, this case and the Austrian lawsuits cited by the Defendants involve common issues and parties. In particular, the Plaintiff has filed two lawsuits in Austria – against Glock Sr. and the Glock Foundation, both of whom are parties in this action – challenging her transfer of Parent Company shares to the Glock Foundation.[41] A judgment against the Plaintiff has been entered in one of these lawsuits,[42] and in the other, the Plaintiff is advancing the same argument that she is making here: that Glock Sr. "fraudulently induced her to transfer her shares."[43] In addition, in both this action and the Austrian lawsuit, the Plaintiff is seeking restoration of her Parent Company shares. Thus, it would advance the interest of judicial efficiency to stay this action until the Austrian courts have rendered a final judgment on the Plaintiff's claims.[44]

---

[40]    Royal & Sun Alliance, Inc., 466 F.3d at 95 (emphasis added); see also AAR Int'l, Inc. v. Nimelias Enterprises S.A., 250 F.3d 510, 518 (7th Cir. 2001) ("In evaluating the propriety of the district court's decision to abstain . . . we must first determine whether the federal and foreign proceedings are parallel . . . [i]f the actions are not parallel, the *Colorado River* [abstention] doctrine does not apply.").

[41]    Enzinger Decl. ¶¶ 20-21.

[42]    Enzinger Decl. ¶ 20.

[43]    Enzinger Decl. ¶ 21.

[44]    However, to be clear, the Court disagrees with the Defendants that this case overlaps with the remaining Austrian lawsuits, which largely concern (1) assets and alimony that the Plaintiff may be entitled to as a consequence of her divorce and (2) specific business resolutions passed by the Parent Company's General Assembly.

The second international abstention factor – international comity – favors the Defendants as well. For this factor, the Court must look to, *inter alia*, the nature of the foreign judicial proceedings,[45] as well as the "relative strengths of the foreign and domestic interests in the litigation."[46] Here, the Plaintiff does not deny that the Austrian judicial system is fair, and could provide adequate relief. Moreover, Austria has a greater interest in determining whether the Plaintiff may receive restitution of her Parent Company shares from the Glock Foundation. Private foundations in Austria – such as the Glock Foundation – "exist[] only under Austrian law and Austrian law governs all aspects of a [private foundation's] operations . . . [and under Austrian law,] any litigation brought against a [private foundation] may only be brought in the court located in the Austrian region where the [private foundation] was created and is registered."[47] Finally, allowing this case to move forward prior to any disposition

---

Those cases have little to do with the specific transactions giving rise to the Plaintiff's claims here.

[45]   See Turner Entertainment, 25 F.3d at 1519 ("General comity concerns include: (1) whether the judgment was rendered via fraud . . . (2) whether the judgment was rendered by a competent court utilizing proceedings consistent with civilized jurisprudence . . . and (3) whether the foreign judgment is prejudicial, in the sense of violating American public policy because it is repugnant to fundamental principles of what is decent and just.").

[46]   Belize Telecom, Ltd. v. Government of Belize, 528 F.3d 1298, 1306 (11th Cir. 2008).

[47]   Enzinger Decl. ¶ 6.

in the Austrian litigation would risk inconsistent rulings. For example, the parallel lawsuits could produce inconsistent factual findings regarding whether the Plaintiff's transfer of Parent Company shares to the Glock Foundation was the product of Glock Sr.'s fraudulent activity.

Third, the final international abstention factor – fairness – favors the Defendants. With "respect to the goal of fairness, relevant considerations include: (1) the order in which the suits were filed . . . (2) the more convenient forum . . . and (3) the possibility of prejudice to parties resulting from abstention."[48] Here, the Plaintiff does not dispute that the Austrian lawsuits were filed prior to this action and that many of the relevant parties and documents are located abroad. Additionally, the Plaintiff offers no reason why staying this action while she pursues similar claims in Austria would unduly prejudice her. And as this Court has previously reiterated, the "general prejudice of having to wait for resolution is not a persuasive reason to deny [a] motion for stay."[49] Accordingly, based on the applicable international abstention factors, a stay in this action is appropriate.

---

[48] Turner Entertainment, 25 F.3d at 1521-22.

[49] Graywire, LLC v. Ciena Corp., No. 1:08-CV-2993-BBM, 2009 WL 8590870, at *4 (N.D. Ga. July 17, 2009) (internal quotation marks omitted).

However, the Court will allow the Plaintiff to amend her Complaint to narrow her claims so as to distinguish them from the claims asserted in her Austrian lawsuits. For example, if the Plaintiff clarifies that her claims in this action stem solely from injuries inflicted upon the Parent Company – e.g., from (1) the Parent Company's transfer of 50% of its interest in Glock, Inc., and (2) the alleged fraudulent transactions involving Glock, Inc. – then allowing this case to proceed may not raise the same international comity concerns. Accordingly, the Plaintiff has thirty (30) days from the entry of this Order to file an Amended Complaint.

### III. Conclusion

For these reasons, the Court GRANTS the Defendants Consultinvest, Inc., Glock, Inc., and Karl Walter's Motion to Stay Based on International Abstention [Doc. 45]. The Plaintiff has thirty (30) days to file an Amended Complaint.

SO ORDERED, this 19 day of June, 2015.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge